**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gary L. PATTEN, Defendant and Appellant.**

**Crim. No. 979.**

Supreme Court of North Dakota.

June 28, 1984.

Patricia L. Burke, Asst. State's Atty., Bismarck, for plaintiff and appellee State of North Dakota.

James J. Coles, of Bickle, Coles & Snyder, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Gary Patten appealed from a judgment of conviction of the district court, Burleigh County, which found him guilty of removing a child from the State in violation of a custody decree. We affirm.

In May 1982 Gary and his wife, Valery Patten, separated, and Gary received temporary custody of his two sons, ages five and six. The May court order provided that Gary would have custody until a hearing in June 1982, at which time the court would determine who should be entitled to temporary custody pending final resolution of the matter. In August 1982 the court determined that Gary and Valery demonstrated an inability to have visitation without harming the children, but that Valery should have temporary custody of the children pending trial upon the merits. The amended order provided that Gary could visit the children only if Valery agreed because of the harm that visitation engendered.

On Friday, October 22, 1982, Valery agreed to have Gary visit the children for the weekend. Gary picked up the children at the home of Leonard Weigum, Valery's uncle, who resided in Beulah. Gary then took the children to his home near Bismarck, which is in Burleigh County.

On Saturday morning Virginia Illich, a probation officer, visited Gary and the children in order to conduct a home study. Valery had agreed to have Gary visit the children because she thought home studies of both residences would aid the court in determining permanent custody. Illich testified that Gary told her that his home was in disarray because he was moving to his mother's place, which is in Bismarck, and because he was planning to store some of his belongings at his father's residence in Parshall, which is in Mountrail County.

On Saturday afternoon Gary drove toward Parshall. Gary testified that as he approached Parshall he decided to go to Arizona because his sons wanted to visit their grandfather, who was then living in Arizona, not Parshall.

When Gary failed to return with the children on Sunday night, Valery attempted to find the children. She went to Gary's residence and noticed that his home was empty and deserted. Both State and Federal authorities were informed that Gary and the children had disappeared. Months later Gary wrote Weigum a letter and told him that he and the boys were living in Canada and that he had "planned and executed everything to a T." Gary stated in the letter that in May 1982, while he was living in Burleigh County, he ordered a book entitled *Divorce Dirty Tricks*, which described 110 ways to disappear. He admitted in the letter that he had changed his identity by obtaining fictitious documents such as a marriage license, death certificate, social security card, and a driver's license. Gary explained that the purpose of the documents was to establish himself as the sole-surviving parent of the children.

In February 1983 Valery received a call from the Burleigh County sheriff's office, which informed her that Gary was in jail in El Paso, Texas. When Valery flew to El Paso, Gary refused to tell her where the children were living. She eventually found the children in the slums of Juarez, Mexico. In March 1983 Gary and Valery's divorce was final.

A jury found Gary guilty under Section 14–14–22.1, N.D.C.C., of removing a child from the State in violation of a custody decree. On appeal Gary contends that the trial court erred in refusing to give an instruction on the mistake of law defense; that he was denied his Sixth Amendment right to effective assistance of counsel; that the verdict of the jury was against the weight of the evidence; and that the trial court erred in refusing to dismiss the action. According to Gary, a criminal charge cannot be based upon a temporary child-custody order. Because Gary's arguments concerning the mistake of law instruction and the right to effective assistance of counsel are factually intertwined we shall consider them together.

## MISTAKE OF LAW INSTRUCTION AND EFFECTIVE ASSISTANCE OF COUNSEL

Gary reasons that his trial attorney failed to provide him with effective assistance because the trial court denied his request for an instruction on mistake of law. In support of his reasoning, Gary contends that his trial attorney failed to make an offer of proof and failed to investigate the basis for Gary's belief that he did not violate any criminal statute. In addition, Gary maintains that the trial court should have granted his request for an instruction on mistake of law because Section 14–14–02(4), N.D.C.C., is ambiguous.

■ At the trial Gary's attorney asked him to describe his interpretation of the difference between a temporary custody order and a custody decree. When Gary started to relate who had told him about the difference, the State objected. The trial court did not rule on the objection, but simply restated the question originally asked. During oral argument on appeal both Gary and the State maintained that the trial court had found Gary's response to be hearsay. Gary's attorney on appeal argued that an offer of proof was necessary to preserve for appeal the issue of Gary's request for instruction on mistake of law. We believe that Gary's trial attor-

ney did not need to make an offer of proof because the transcript reflects that the trial court did not sustain the objection but rather attempted to help Gary be responsive in his answer.

Gary also argues that his trial attorney failed to investigate adequately the persons who allegedly informed Gary that he could lawfully remove the children from the State. In an affidavit accompanying his brief Gary stated that he received advice from both the Mercer County sheriff's office and from a Burleigh County State's Attorney. The State, however, contends that Gary received effective assistance of counsel, emphasizing that Gary admitted in his affidavit that the Burleigh County State's Attorney did not remember talking with Gary about this matter.

In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court recently articulated the standard of review for determining when a criminal judgment must be overturned because of the actual ineffective assistance of counsel. The Court stated that a defendant who claims that he received ineffective assistance of counsel must establish two elements: the counsel's performance was deficient, and the deficient performance prejudiced the defendant. We believe that the standard of review set forth by the United States Supreme Court is in harmony with previous decisions of this court that have addressed claims of ineffective assistance of counsel. See, e.g., *State v. Mehralian,* 301 N.W.2d 409 (N.D.1981) [reasonable standard for determining competency]; *State v. Kroeplin,* 266 N.W.2d 537 (N.D.1978) [prejudice to the defendant must be alleged and established]. See also *State v. Jensen,* 333 N.W.2d 686 (N.D.1983); *State v. Motsko,* 261 N.W.2d 860 (N.D.1978); *State v. McKay,* 234 N.W.2d 853 (N.D.1975).

In *Strickland* the Court stated that it was not promulgating a mechanical rule, but rather it suggested that an appellate court may resolve the issue of alleged ineffective assistance of counsel by discussing one of the elements if it disposes of the issue.

In the present case we do not need to determine if Gary's trial attorney was deficient in investigating the basis of Gary's erroneous belief that the removal was lawful. The dispositive element in this case is that no prejudice to Gary occurred. Under Section 12.1–05–09, N.D.C.C., a defendant who asserts the affirmative defense of mistake of law not only must show reliance on a statement given by an official but also that his reliance was reasonable. See, e.g., *State v. Rohweder,* 305 N.W.2d 25 (N.D.1981); see generally *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) [officials clearly gave defendant erroneous information].

At trial Gary testified that he "did not ignore" the amended order which granted Valery temporary custody of the children. He stated that he simply did not "obey" the amended order. Even if the Mercer County sheriff's office and the Burleigh County State's Attorney had told Gary that his difficulty with Valery was a "civil" matter, Gary's alleged reliance on these official statements would clearly be unreasonable. The mistake of law defense is a limited one because of two general presumptions underlying the general rule that a mistake of law is no defense: everyone is presumed to know the law, and justice to the individual is outweighed by other more important interests, such as effective enforcement of the law. See *Kratz v. Kratz,* 477 F.Supp. 463 (E.D.Pa. 1979). Extending the mistake of law defense to a case involving conduct that is blatantly offensive would subvert the objective of Section 12.1–05–09, which is to provide a limited defense to a person who has in good faith sought to determine the lawfulness of an act. Therefore, we hold that Gary was not denied effective assistance of counsel.

Similarly, Section 12.1–05–09(1) does not support Gary's contention that the trial court improperly refused to grant his request for an instruction on mistake of law. Section 12.1–05–09(1) states that mistake of

law is an affirmative defense if in good faith a person reasonably relied on a statute. Gary maintains that Section 14–14–02(4) is ambiguous and that he in good faith reasonably relied on this ambiguous statute.

Section 14–14–02(4) provides:

A " '[d]ecree' or 'custody decree' means a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and modification decree."

Gary argues that this section fails to clarify whether or not an interim order is a "decree" or "custody decree" within the meaning of Section 14–14–22.1, which provides, in part, that "[a]ny person who intentionally removes, ... his or her own child under the age of eighteen years outside North Dakota with the intent to deny another person's rights under an *existing custody decree* shall be guilty of a class C felony." [Emphasis supplied.] Gary maintains that the definitions of the words "decree" and "custody decree" do not include the term "interim order."

■ Section 1–01–46, N.D.C.C., states that the word "decree," unless otherwise provided, has the same meaning as the word "judgment." Section 14–14–02(4) states that a "custody decree" means "a custody determination contained in a judicial decree or *order* ..." [Emphasis supplied.] In the present case the basis for the complaint against Gary was his violation of the amended order which granted temporary custody to Valery. Under Section 14–14–02(4) this amended order clearly constitutes a "custody decree." The State thus could lawfully prosecute Gary under Section 14–14–22.1 for violating an existing custody decree. The trial court properly refused Gary's request for an instruction on mistake of law.

## SUFFICIENCY OF THE EVIDENCE

Gary contends that there was insufficient evidence to support the judgment of conviction. This court has frequently articulated the standard of review in cases challenging the sufficiency of the evidence.

See, e.g., *State v. Flamm*, 338 N.W.2d 826 (N.D.1983). In *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982), we stated: "[W]e do not weigh conflicting evidence, nor do we judge the credibility of the witnesses; instead, we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction."

■ Gary contends that there was insufficient evidence to establish that in Burleigh County he formed the intent to deprive Valery of her rights under an existing custody decree. We disagree. At trial a letter was introduced that created the inference that when Gary was living in Burleigh County he intended to violate the custody decree. On the day Gary left Illich observed that his home was in disarray because he was preparing to move, and later Valery noticed that Gary's home was empty and deserted. A jury could have concluded beyond reasonable doubt that Gary had formed the intent to violate the decree while residing in Burleigh County. We therefore determine that there was sufficient evidence to support the conviction.

## DISMISSAL OF CRIMINAL CHARGE

■ Gary contends that the trial court should have dismissed the action, arguing that a criminal charge cannot be based upon an interim child-custody order. This issue, however, never was presented to the trial court and thus is not properly before this court. See *State v. Frank*, 350 N.W.2d 596 (N.D.1984); *State v. Brickzin*, 319 N.W.2d 150 (N.D.1982). Even if we were to address this issue, we would reject Gary's argument. See generally Rule 42, N.D.R.Crim.P., explanatory note [criminal contempt may arise from defying a court's authority in a civil action].

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.