STATE of North Dakota, Plaintiff and Appellee,

v.

Jeffrey T. MICKO, Defendant and Appellant.

Cr. No. 1126.

Supreme Court of North Dakota.

Sept. 30, 1986.

Robert G. Hoy, State's Atty., Fargo, for plaintiff and appellee.

J. Bill Hansen, Fargo, for defendant and appellant.

GIERKE, Justice.

On August 2, 1985, Jeffrey Thomas Micko was found guilty of two counts of theft of property in excess of $500.00, a class C felony under §§ 12.1-23-05(2) and 12.1-23-05(6), North Dakota Century Code. He appeals from the judgment of conviction and requests that his case be remanded to the trial court for entry of judgment of acquittal or, alternatively, that he be granted a new trial. Micko bases his appeal on two grounds: (1) That the trial court committed prejudicial error by admitting into evidence a statement made by Micko to agents from the Minnesota Bureau of Crime Apprehension (MBCA); and (2) That he was denied a fair trial due to ineffective assistance of counsel. We affirm.

On December 13, 1983, Jeffrey Thomas Micko (Micko) and an accomplice left St. Paul, Minnesota, on a shoplifting spree which led them through the West Ridge Mall in Fergus Falls, Minnesota, and culminated at the West Acres Shopping Center in Fargo, North Dakota. Micko and the accomplice were observed by no fewer than seven police officers from the MBCA, the Moorhead Police Department, and the Fargo Police Department. Testimony elicited from police officers at Micko's jury trial revealed that Micko, driving a brown Cadillac automobile, entered the shopping center parking lot, walked into one of the stores in the mall and a few minutes later

exited the mall with his coat buttoned and his hands in his pockets.

Agent Perron, of the MBCA, testified that Micko entered the stores looking lean and when he came out of a store " ... Micko would appear to be fat. Bulging type stomach." Micko would sit in the car for a few minutes and then reenter a store. This process occurred at the same store two or three times. Micko would then move the car to another area of the parking lot and begin the entire procedure again. The State offered evidence which revealed that Micko entered West Acres a minimum of seven times, going into four different department stores, and moved his car around the parking lot five times. There was also testimony that on two occasions Micko removed a full garbage bag from the interior of the car and placed it in the trunk.

After Micko left the West Acres Shopping Center, police officers arrested and charged him with theft of property. A search warrant was obtained for the brown Cadillac and although Micko was at West Acres for only 64 minutes, merchandise valued at over $2500.00 was discovered in the car. No sales receipts or shopping bags with store logos were discovered in the car.

The merchandise was marked and entered into evidence at Micko's trial. Many of the items were identified by representatives of the four department stores Micko was observed leaving. Micko was charged with one class C felony count of theft for the items taken from one store and an additional felony count for the items taken from the other three stores, which were aggregated under § 12.1–23–05(6), N.D. C.C.

At Micko's jury trial, during the State's examination of Agent Raymond Perron, defense counsel made several objections to questions asked by the State concerning statements made by Micko to Agent Perron

at a post-arrest interrogation. The questions objected to involved a discussion regarding Micko's shoplifting activities. Defense counsel's first objection requested the exclusion of certain admissions made by Micko, *specifically* about his activities *at West Acres* and the nature of the crime of shoplifting. This objection was overruled and Micko's statements were admitted into evidence. Defense counsel's second objection occurred after the State asked Agent Perron if Micko had made any *general* statements about his shoplifting activities in the *past*. [1] After a side-bar conference, this objection was also overruled and Agent Perron testified: "At one point Mr. Micko said that he had been a professional shoplifter for over 25 years and that it was hard work."

Micko was convicted of both theft counts and was sentenced to two five-year terms in prison to run concurrently and consecutively with a previous conviction in Minnesota stemming from his shoplifting activities in that state.

Micko claims that the trial court incorrectly admitted his general statement about his past shoplifting activities and by so doing committed prejudicial error. Micko contends that the trial court misapplied Rules 403 and 404 of the North Dakota Rules of Evidence and supporting case law in that the harmful consequences of his statement outweighed the probative value of its admission.

The State argues Micko's assertion that he was a "hard-working professional shoplifter" is admissible under the "other purposes" exception to Rule 404. The "other purpose" being that Micko's statement is probative of his intent to shoplift.

■ The general rule is that evidence of prior acts or crimes cannot be received unless substantially relevant for some purpose other than to show a probability that a defendant committed a crime charged be-

---

1. The State posed the following question:
"Q. You indicated earlier that, I think you also had a conversation with him *in general terms* about shoplifting and Mr. Micko. Do you recall a specific statement that he may have made regarding his own involvement *in the past?*" [Emphasis added.]

cause he acted in conformity with his past behavior. *State v. Ferguson,* 391 N.W.2d 172, 174 (N.D.1986); *State v. Stevens,* 238 N.W.2d 251, 257 (N.D.1975). This general rule acknowledges the inherent prejudicial effect such evidence may present to the trier of fact and limits its use under specifically recognized exceptions pertaining to motive, intent and lack of accident or mistake. *Ferguson, supra.*

Rule 403, N.D.R.Ev., provides as follows:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The pertinent language of Rule 404, N.D.R.Ev., states:

"(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

These rules adopted the common law approach to evidence of prior bad acts and are basically a formal recitation of the prior existing rule of law of this state. *State v. Forsland,* 326 N.W.2d 688, 691–92 (N.D. 1982).

In any analysis contemplating the admission of evidence offered under Rule 404(b), N.D.R.Ev., this Court has consistently held that the mere invocation of an exception to the rule does not end the inquiry, it only begins it. *Stevens, supra,* at 257. Rule 404(b) does not authorize automatic admission merely because the proponent advances a proper purpose for the evidence; instead, the proponent must demonstrate both the relevance *and* the probative value of the evidence. *Dahlen v. Landis,* 314 N.W.2d 63, 70 (N.D.1981).

Inquiry into evidence proffered under one of the exceptions to Rule 404(b) necessitates an examination of the relevance of the evidence under a three-step approach: (1) Initially, the court must look to the purpose for which the evidence is offered because there must be a stricter showing of relevancy to prove identity or commission of a criminal act than when the evidence is offered to prove knowledge, intent, or state of mind; (2) Additionally, the "other crimes" evidence offered must be "clear and convincing," in other words, the proponent of the evidence must reveal substantial and reliable proof of prior similar acts to permit admission of the evidence by the trial court; (3) Finally, in the criminal setting, before such evidence can be considered at all there must be proof of the crime charged in the instant case which would permit the trier of fact to establish beyond a reasonable doubt that the defendant committed the particular act charged based independently on the evidence presented to it, without considering the evidence of similar acts. *State v. Stevens,* 238 N.W.2d 251, 257–59 (N.D.1975) [quoting McCormick on Evidence, 2d Ed. § 190, pp. 451–454]; *State v. Forsland,* 326 N.W.2d 688, 692–93 (N.D.1982) [quoting 2 Weinstein's Evidence, by Weinstein and Berger (1981), ¶ 404[8] pp. 404–52 to 404–60, ¶ 404[12] pp. 404–84 to 404–97. This final step in the analysis can usually be accomplished with a cautionary instruction by the court as to the evidence's admissibility and its use for a limited purpose. *Stevens, supra,* at 257; *State v. Jelliff,* 251 N.W.2d 1, 8 (N.D.1977).

More importantly, however, even if the evidence meets the requirements of this three-step relevance analysis, it still must have greater probative value than the harmful or prejudicial consequences that flow from its admission. *See, e.g., Ferguson, supra,* at 174–75; *Stevens, supra,* at 257–59; *Forsland, supra,* at 692–93. Analyzing the probative value and the prejudicial effect of offered evidence under Rule 404(b) necessarily incorporates the balancing test of Rule 403 into the evaluation of evidence of other crimes and must be-

come the trial court's primary and overriding consideration. *Forsland, supra,* at 691; 2 Weinstein's Evidence, ¶ 404[8], pp. 404–52 to 404–54.

■ It is apparent from the record that the trial court erred in admitting Micko's statement to Agent Perron that he was a professional shoplifter for 25 years and that it was hard work. Although Micko's statement may pass muster under the three-step relevance analysis required under Rule 404(b), it must fail when its probative value is balanced against the harmful consequences that admission of this evidence potentially has on the trier of fact. A review of the transcript from the trial, and in particular the discussion between the trial judge and attorneys over the admissibility of Micko's statement, reveal that the trial judge did not make the essential balancing required of him under Rule 403.[2] As revealed by the record, the trial court ended its inquiry precisely where this Court has stated it must begin, at the invo-

cation of an exception to the character evidence rule. *Stevens, supra,* at 257.

The trial court's analysis of the probative value of Micko's statement should have been balanced against the prejudice caused by its admission. Rule 404(b), Rule 403, N.D.R.Ev. After making this balance, the harmful prejudicial effect of permitting admission of Micko's statement about his past as a professional shoplifter should have led to its exclusion. Our conclusion that the statement was improperly admitted rests on: (1) The failure of the trial court to utilize the proper analysis when considering the admissibility of the evidence; (2) Micko's statement was prejudicial, misleading and cumulative in violation of the purpose behind Rules 403 and 404(b); (3) This evidence was unnecessary in light of Micko's other specific admissions about the thefts at West Acres which were submitted to the jury; and (4) The purpose of admitting Micko's statement was not to reveal his intent but to characterize Micko as a

2. The transcript from the side-bar conference went as follows:

"THE COURT: Well, what was the rule on that?

"DEFENSE COUNSEL: 403, Your Honor.

"THE COURT: I'm speaking of the other one.

"DEFENSE COUNSEL: 404?

"THE COURT: Criminal activity. Okay.

"THE STATE: I guess what we're looking at, Your Honor, is Rule 404(b).

"THE COURT: But you have to get past that first sentence first initially.

"THE STATE: Right. We're not offering it. . . .

"THE COURT: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

"THE STATE: Right. We don't care about his character. What we're offering to show is that this was done intentionally, knowingly, that he was involved as opposed to just Lindstrom. That he knew he was involved. That there wasn't any mistake or anything like that involved.

"THE COURT: Could you get yourself into that second sentence?

"THE STATE: Certainly. I don't care what his character is. He was there. He was arrested. He knew he was involved. He knew he was shoplifting. He knew it wasn't just Lindstrom. It certainly wasn't any mistake. He knew what he was doing was a crime."

Whereupon, the trial judge entertained another plea by defense counsel that the statement was misleading and prejudicial before the court ruled that the statement was relevant and permitting it to be admitted to the jury, stating, "It's not that prejudicial." Proceeding further in the transcript:

"THE COURT: So for the record, if the witness answers in that ... in that way we discussed, it's admissible under 403 ... or under 404(b) and not excluded under 403. Did I say that right?

"THE STATE: Yes."

Thereafter, the jury was called back into the courtroom and Agent Perron testified that Micko stated to him that Micko had been a professional shoplifter for 25 years and that it was hard work.

The trial judge's analysis did not extend into the probative value-harmful prejudice balancing test required under Rule 404(b). The record is void of any consideration by the trial court over the prejudice contention raised by defense counsel and reveals that the court did not ask the State why it should ignore the prejudice involved in admitting the evidence on the basis of the enhanced probative value or need for the evidence. The trial court simply asked the State to fit Micko's general statement about his past into an exception to Rule 404(b) without considering the balance required under Rule 403.

professional shoplifter who had acted in conformity with his past actions.

■ Our review of trial court error is guided by Rule 52, N.D.R.Crim.P., which defines errors as harmless and obvious. Rule 52(a), (b), N.D.R.Crim.P. Review is limited to a determination of whether or not the error committed prejudiced the substantial rights of the accused. Rule 52(a), N.D.R.Crim.P. If no prejudice resulted, the error may be disregarded. Rule 52(a), N.D.R.Crim.P.

Our objective in reviewing this conviction is to determine whether the error was so prejudicial that substantial injury resulted and a different decision probably would have resulted absent the error. *State v. Mehralian,* 301 N.W.2d 409, 418 (N.D. 1981); *State v. Manning,* 134 N.W.2d 91, 99 (N.D.1965). Not every error is prejudicial, however, and unless the mistake had some effect on the jury's verdict, the conviction will stand. *Manning, supra.*

■ After reviewing the record in this case, we find nothing that requires us to disturb Micko's convictions, especially in light of the overwhelming evidence of his guilt presented to the jury. Although there was error in admitting Micko's statement about his past, we feel this error was harmless and Micko was given a fair trial.

Defendant Micko next seeks relief based upon his claim of ineffective assistance of counsel. Micko challenges his defense counsel's effectiveness in three respects: (1) He failed to make a motion for mistrial after he learned that Micko was observed wearing handcuffs by members of the jury; (2) He failed to ask for a jury instruction cautioning the jury as to the limited purpose that certain evidence about his past activity was admitted to prove; and (3) He failed to move for severance of count two of the indictment.

■ The "counsel clause" of the Sixth Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment of the United States Constitution, and Section 12, Article I of the North Dakota Constitution, guarantees a criminal defendant the right to counsel at trial. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 799 (1963); *State v. Keller,* 57 N.D. 645, 223 N.W. 698 (N.D.1929). The right to counsel includes the right to effective counsel and ineffective, incompetent, or inadequate representation is the same as having no counsel at all. *Keller, supra,* 223 N.W. at 699.

This Court abandoned the "farce and mockery of justice" test in determining whether a defendant received the effective representation of counsel in *State v. Bragg,* 221 N.W.2d 793, 802 (N.D.1974), and adopted the "reasonably effective assistance" standard. *Bragg, supra,* at 802; *State v. McKay,* 234 N.W.2d 853, 857 (N.D. 1975).

Under the reasonably effective assistance standard, this Court has applied the rationale and holding of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in a number of recent cases. *See, e.g., State v. Patten,* 353 N.W.2d 30, 33 (N.D.1984); *State v. Thompson,* 359 N.W.2d 374, 377 (N.D.1985); and *State v. Kunkel,* 366 N.W.2d 799, 801 (N.D.1985). In *Strickland,* the United States Supreme Court addressed for the first time the issue of actual ineffectiveness of counsel at trial.[3] We believe that the standard set forth by the United States Supreme Court in *Strickland* is in harmony with our previous decisions that have addressed this issue. *Patten, supra,* at 33.

■ The "proper standard," established in *Strickland* and adopted by this Court, involves a two-step assessment of counsel's alleged ineffectiveness. The burden is on the defendant to meet both elements and failure of the defendant to meet his burden for each element renders his claim deficient. *Strickland,* 104 S.Ct. at 2064. However, in reviewing a claim of ineffec-

---

**3.** Actually, *Strickland* involved the ineffective assistance of counsel question in the forum of a sentencing hearing in which the defendant, David Leroy Washington, received the death penalty for three particularly heinous murders.

tive assistance of counsel, this Court need not assess both elements involved in the *Strickland* test to determine whether counsel's performance was deficient. *Thompson, supra,* at 377.

"There is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* at 2069–2070.

It must be emphasized that the principles established in *Strickland* are not mechanical rules but are used to guide the court's decision-making process when an ineffective assistance of counsel issue is raised. *Thompson,* at 377. The ultimate focus of judicial inquiry must be on the fundamental fairness of the proceeding, the result of which is being challenged, by considering the totality of the evidence presented to the jury.

With these practical considerations in mind, we now turn to the first criterion of the two-part *Strickland* test. This part of the test establishes the standard to be used when measuring counsel's alleged deficient performance and considers whether or not the attorney rendered "reasonably effective assistance, considering all of the circumstances." *Thompson,* at 377. In this analysis, the court works under a presumption that counsel's conduct is reasonable and it is up to the defendant to show that his representation fell below an objective

standard of reasonableness. The court then scrutinizes the attorney's conduct very deferentially, making a conscious effort to limit the distorting effect of hindsight by reconstructing the challenged circumstances and evaluating the attorney's conduct from this perspective. *Thompson, supra.* When considering counsel's performance, it is important to remember that the ultimate focus must be on the fairness of the proceeding involved and upon the attorney's role in ensuring this fairness. *Strickland,* at 2065.

The second component of the *Strickland* ineffective assistance of counsel test involves the requirement that the defendant affirmatively present proof of actual prejudice. *State v. Kroeplin,* 266 N.W.2d 537, 544 (N.D.1978). The standard utilized in this determination is whether there is a reasonable probability, *but for* counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson,* at 377. In a criminal case, the question must be whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting the accused's guilt. *Thompson, supra.* The United States Supreme Court defined a reasonable probability as a probability that would undermine confidence in the outcome of the proceeding. *Strickland,* at 2068.

■ Having articulated the standard for judging ineffectiveness claims and applying it to this case, we deny relief based upon our belief that the record conclusively reveals Micko's ineffective assistance of counsel claim is meritless. We need not concern ourselves over whether defense counsel's conduct was unreasonable in this case as Micko has failed to present any persuasive argument revealing sufficient prejudice to warrant setting aside his convictions.[4] The record affirmatively demon-

---

**4.** In not reviewing Micko's allegations, we do not mean to infer that defense counsel's conduct was in any way deficient. We are simply exercising our prerogative under the ineffective assistance of counsel test which permits us to use the easiest means to dismiss Micko's claim.

To the contrary, it appears from the record that Micko's defense counsel performed admirably in light of the circumstances of Micko's case. In fact, any reconsideration of the three alleged errors made by defense counsel in his representation of Micko would require this Court to do exactly that which we refuse to do, scrutinize

strates, in light of the overwhelming evidence presented by the State, that even if counsel had acted ineffectively, Micko has not offered proof establishing a reasonable probability that the outcome of his trial would have been any different or that the factfinder would have had a reasonable doubt over his guilt. In other words, Micko failed to establish sufficient prejudice to render his trial fundamentally unfair and we must conclude that he was not denied effective assistance of counsel.

Accordingly, we affirm the convictions.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

defense counsel's trial judgment and strategy with the benefit of perfect 20/20 hindsight. Therefore, we must conclude that Micko's attorney acted within that objective standard of reasonableness demanded of attorneys in criminal cases ensuring Micko a fair proceeding under our system.