In the Interest of D.J.H., a Child.

S.H., Petitioner and Appellant,

v.

Mrs. Virginia PETERSEN, Program Supervisor, Children & Family Service, Social Services Board, Bismarck, North Dakota, and John Graham, Executive Director, Social Service Board of North Dakota, Bismarck, North Dakota, B.G.W., and Catholic Family Services of Minot, North Dakota, Respondents and Appellees.

Civ. No. 11381.

Supreme Court of North Dakota.

March 2, 1987.

Traynor, Rutten and Traynor, Devils Lake, for petitioner and appellant; argued by John T. Traynor.

Blaine L. Nordwall, Asst. Atty. Gen., Human Services Dept., Bismarck, for respondents and appellees; Virginia Petersen, Program Supervisor, Children & Family Service, Social Services Bd., Bismarck, and John Graham, Executive Director, Social Service Bd. of N.D., Bismarck; argued by Blaine L. Nordwall.

Nilles, Hansen and Davies, Fargo, for respondent and appellee Catholic Family Services of Minot; submitted on brief.

ERICKSTAD, Chief Justice.

Sally, a pseudonym for S.H., appeals from the order of the District Court for the Northwest Judicial District, sitting as a Juvenile Court pursuant to Section 27–20–02(6), N.D.C.C., denying her motion to vacate an order terminating her parental rights in her son David, a pseudonym for D.J.H. We affirm.

David was born on February 20, 1986, to Sally, an unmarried 22–year-old woman. On February 23, 1986, temporary care, custody and control of David was placed in the Director of the Ward County Social Service Board because Sally was contemplating the termination of her parental rights in David. The Director of the Ward County Social Service Board apparently used Catholic Family Services of Minot, a licensed child-placing agency, to facilitate the adoption of David. David was placed in foster care on February 23, 1986. On February 24, 1986, Sally signed a petition to terminate her parental rights and the parental rights of the putative father Brian, a pseudonym for B.G.W., in her son David. In her petition, Sally states in part as follows:

"10. That the petitioner [S.H.] or respondent [B.G.W.] is unable to give the child proper care, nurture and training, and petitioner believes it is in the best interest of the child and of the public that these proceedings be brought and that the child be placed in a suitable family home for adoption.

"11. That petitioner requests an order for termination of the parental rights of the petitioner and the respondent; and the petitioner requests that the effect of such an order of termination be to terminate all rights and obligations with respect to the child, and of the child to and through the parent arising from the parental relationship.

"WHEREFORE, Petitioner prays as follows:

"1. That the Court enter an order terminating the parental rights of the Petitioner and Respondent thereby terminating all petitioner's and respondent's rights and obligations with respect to the child, and of the child to or through the petitioner and respondent arising from the parental relationship.

"2. That the Court enter an order confirming the action of the Petitioner in placing her child with the Executive Director of the Social Service Board of North Dakota for the purpose of placing said child for adoption, subject to the further order of the Court in the event said child is not adopted within two years after the date of this Order and a guardian of said child has not been appointed; and

"3. That said Executive Director may utilize the services of Catholic Family Services, a licensed child-placing agency, for the purpose of (1) Recommending and supervising foster care for the child pending adoptive placement, (2) Recommending and supervising adoptive placement of the child, and (3) Recommending that consent to adoption be executed or withheld.

"Dated at Minot, North Dakota, this 24 day of February, 1986.

/s/ [S.H.]
[S.H.]

"STATE OF NORTH DAKOTA )
                        ) ss.
"COUNTY OF WARD         )

"[S.H.], being first duly sworn, deposes and says that she is the petitioner in the within entitled matter; that she has read (or heard read) the within and foregoing petition and knows the contents thereof and that the same is true of her own knowledge, except as to the matters therein stated on information and belief, and as to those matters she believes it to be true.

/s/ [S.H.]
S.H."

On March 17, 1986, Judith E. Howard filed with the district court an affidavit of service of the petition by mail to Mrs. Virginia Petersen in her capacity as Program Supervisor of Adoptions/Services to Unmarried Parents for the Division of Children and Family Services in the Department of Human Services, admissions of service of the petition by Sally and Virginia Petersen, Sally's petition to terminate her parental rights and the parental rights of Brian in David, order, and summons. The documents filed with the district court are captioned "[S.H.], Petitioner, -vs- Mrs. Virginia Petersen, Program Supervisor, Children & Family Services, Social Service Board, Bismarck, North Dakota, and [B.G.W.], Respondents." The summons is signed by Ms. Howard as attorney for the petitioner. On March 18, 1986, Ms. Howard filed with the court the sheriff's certificate of personal service documenting that Brian received notice regarding the parental termination hearing scheduled for April 14, 1986.

The district court, sitting as a juvenile court, convened the parental termination hearing on April 14, 1986, with Sally, her parents and sister, Sister Mary Kay from Catholic Family Services, and Ms. Howard in attendance. Brian did not appear; however, Ms. Howard's office was informed that he might appear and contest the petition. At the hearing, Sally was called as a

witness by Ms. Howard and examined. Her testimony, in part, follows:

"Q. Do you feel, [S.H.], that you or [B.G.W.] are able to give this baby the proper care, nurture and training?

"A. No.

"Q. Do you believe it is in the best interests of the child and the public that these proceedings be brought and your rights and his rights be terminated?

"A. Yes.

"Q. Is it your request to the court that Catholic Family Services be the child-placing agency that should find a suitable family home for this baby?

"A. Yes

"Q. Have you received counseling with regard to this decision, [S.H.]?

"A. Yes.

"Q. Who did you counsel with?

"A. Sister Mary Kay.

"Q. You understand, don't you, [S.H.], that if the court should grant this request, that once your rights are terminated that you no longer have any rights of any kind to the baby? Do you understand that, [S.H.]?

"A. Yes.

"Q. Now, because we have a situation where [B.G.W.] may try to question these proceedings, [S.H.], is it your request that the court take this testimony here today but not act upon it until [B.G.W.'s] time for appeal has expired?

"A. Yes.

"Q. Now, at this time, [S.H.], I am going to hand you a document that is called 'Consent.' And I want you to read it and if you have any questions about this I want you to ask me or the court. If you agree with it I would like you to sign it here in front of the Judge.

"( [S.H.], the petitioner, signs the consent form.)

"MS. HOWARD: Your Honor, [S.H.] has signed the document entitled 'Consent' and we would present it to the court at this time with the understanding that this too would be for preservation for use in 30 days after the time for appeal has expired.

"THE COURT: Let the record show I am acknowledging her signature.

"MS. HOWARD: That is all we have at this time from this witness.

"THE COURT: Do you think it would be appropriate to state why you want the court to defer terminating [S.H.'s] rights?

"MS. HOWARD: Yes, Your Honor. There is a concern on our part that [B.G.W.] may try to appeal the court's decision and it has been my client's concern that if her rights are terminated but he still has rights of some sort that then his rights would be superior to hers, so she would like for her rights to not be terminated until his time for appeal has expired. In that respect the testimony today is taken for preservation.

"THE COURT: If for some reason the Supreme Court would reverse my order terminating [B.G.W.'s] rights which I am contemplating doing, you would also like to share in parental rights if he should have parental rights? Is that your understanding?

"[S.H.]: Yes.

"THE COURT: Do you have any question about anything that hasn't been asked?

"[S.H.]: No."

The court explained the procedure that would be followed in terminating Sally's and Brian's parental rights in David in the following colloquy between the court and Ms. Howard:

"MS. HOWARD: Your Honor, it would seem to me that the young man has had plenty of time, nine months of pregnancy, plus the additional time of birth. He had notice of her plans plus Catholic Family Services informed him of her plans. This is an 11th hour attempt to halt the proceedings and it seems to me it would be in the best interests of the child if his rights were to be termi-

nated today and that is what we request the court to do.

"THE COURT: I think the record should show it is now almost 9:50 and there has been no appearance by [B.G.W.] and I feel that a strong case has been made to grant the relief requested by counsel. I find that proper notice has been given and I will terminate the parental rights of [B.G.W.] and I will ask that you serve him notice of entry of judgment and if there is no appeal, after the appeal period has passed I will then terminate the parental rights of the petitioner, [S.H.]. And, [S.H.], obviously you are quite moved by this. I know it is tough. It is my understanding that the case has been scheduled at least once before and termination of parental rights is never easy for the mother. You can be assured that Catholic Family Services will place your child in a good home. What you are doing is an act of love for your child rather than an act of abandonment and I won't be so presumptuous as to say this won't bother you in the future but I think when you reflect on this objectively you will be satisfied that you did the right thing although it is not easy. I will sign the order terminating the parental rights of [B.G.W.] and then eventually if there is nothing further, even if the Supreme Court hears it and my decision stands, I will sign the order terminating the parental rights of [S.H.] and if there is no appeal I will sign her termination of parental rights after the time for appeal is passed. Court is adjourned."

On April 15, 1986, the district court entered an order terminating Brian's parental rights in David. On May 19, 1986, the district court entered an order terminating Sally's parental rights in David. The district court's findings of fact and order terminating Sally's parental rights reads as follows:

## "FINDINGS OF FACT

"1. That the above-named child is now within the County of Ward and State of North Dakota, and this Court has acquired jurisdiction of the subject matter and of all persons interested in the above-entitled proceedings; that Petitioner is a resident of the State of North Dakota, that Petitioner is 22 years of age, having been born on the 1st day of December, 1963, at Rolla, North Dakota, and that she is not of Indian heritage.

"2. That Petitioner is not married and is the mother of a certain male child born to her out of wedlock on the 20th day of February, 1986, at Minot, North Dakota, named [D.J.H].

"3. That paternity of said child has not been legally established or adjudicated, and said Petitioner has not commenced and does not intend to commence any proceedings to legally establish the paternity of said child.

"4. That the written consent of the Petitioner acknowledged before the Court has been given.

"5. That Petitioner placed her child with the Director of the Social Service Board of Ward County, North Dakota, for the purpose of care, custody and control of said child, and said child is now in the custody of said Director of the Social Service Board of Ward County, North Dakota, which is fit and proper to be appointed as custodian of said child.

"6. That the Petitioner received counseling from Catholic Family Services with regard to her decision to terminate her parental rights and understands the consequences of her act.

"7. That it is in the best interests of said child and this State that Petitioner and all other persons be forever deprived of all parental rights with reference to said child.

"8. That the Respondent, [B.G.W.], made no appearance before this Court; that an Order Terminating Respondent's Parental Rights to the minor child was made on April 15, 1986. That the 30–day period in which the Respondent could appeal the Court's decision has passed.

## "ORDER TERMINATING PARENTAL RIGHTS

"IT IS HEREBY ORDERED:

"I.

"That the above-named child is within the provisions of Chapter 27–20 of the Uniform Juvenile Court Act of the North Dakota Century Code.

"II.

"That Petitioner and all other persons be and they are hereby deprived of all parental rights with reference to said child and the relationship of parent and child between the child and the natural parents is hereby forever terminated.

"III.

"That the Executive Director of the Social Service Board of North Dakota be appointed to have the care, custody and control of the person of the above-named child and that said Board be authorized to consent to the adoption of the above-named child; That the responsibility for the supervision of said child may be given by the Executive Director of the Social Service Board of North Dakota to Family Catholic Services [Catholic Family Services] of Minot, North Dakota, a licensed child-placing agency and that said agency be authorized to make recommendations to the Executive Director of the Social Service Board of North Dakota as to the placement of said child in a

suitable home looking to the adoption of said child."

On September 19, 1986, Sally moved the district court for an order to vacate the order terminating her parental rights. On October 7, 1986, the district court denied Sally's motion to vacate. Sally appeals from the order denying her motion to vacate. She does not assert that her consent and petition to terminate her parental rights should be voided as having been obtained by fraud, duress, or undue influence. The crux of her appeal is that she was denied independent counsel in the termination hearing.

Sally initially argues that because she did not receive notice of the order terminating her parental rights,[1] her appeal should be regarded as an appeal from that order under the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., rather than an appeal from the order denying a motion to vacate the order terminating parental rights under Rule 60(b), N.D.R.Civ.P.

Catholic Family Services argues that Sally, having made a free calculated and deliberate choice, may not now seek recourse under Rule 60(b).[2] It further asserts that she failed to comply with the pertinent statutory requirements of Chapter 27–20, N.D.C.C.,[3] which it asserts are inconsistent

---

1. We note, incidentally, that neither the district court nor Ms. Howard are directed by our Rules of Civil Procedure to serve Sally with the notice of judgment. Rule 77(d), N.D.R.Civ.P., provides that "[w]ithin 10 days after entry of judgment" the notice of entry of judgment "shall be served by the prevailing party upon the adverse party." Sally, as the prevailing party in the parental termination hearing, is not entitled to be served with the notice of judgment.

2. Rule 60(b), N.D.R.Civ.P., provides in part as follows:

"(b) *Mistakes—Inadvertence—Excusable Neglect—Newly Discovered Evidence—Fraud—Etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reasons: (i) mistake, inadvertence, surprise, or excusable neglect; (ii) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (iii) fraud (wheth-

er denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (iv) the judgment is void; (v) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective applications; or (vi) any other reason justifying relief from the operation of the judgment."

3. Catholic Family Services cites Sections 27–20–37(1), 27–20–56(1), and 27–20–45(5), N.D.C.C., to support its contention. Section 27–20–37(1) reads as follows:

"*27–20–37. Modification or vacation of orders.—*

"1. An order of the court shall be set aside if (a) it appears that it was obtained by fraud or mistake sufficient therefor in a civil action, or (b) the court lacked jurisdiction over a necessary party or of the subject matter, or (c) newly discovered evidence so requires."

Section 27–20–56(1) reads as follows:

or in conflict with Rule 60(b)(vi). Catholic Family Services contends in essence that Sally's appeal rights are limited pursuant to Rule 81(a), N.D.R.Civ.P.,[4] to the statutory provisions of Chapter 27–20.[5]

The record discloses that Sally's motion to vacate was made pursuant to Rule 60(b)(vi). Rule 60(b)(vi) grants the court discretion to vacate an order for, in addition to the first five enumerated reasons, "any other reason justifying relief from the operation of the judgment." A motion under subdivision (vi) of Rule 60(b) is within the sound discretion of the district court

*27–20–56. Appeals.—*
"1. An aggrieved party, including the state or a subdivision of the state, may appeal from a final order, judgment, or decree of the juvenile court to the supreme court by filing written notice of appeal within thirty days after entry of the order, judgment, or decree, or within any further time the supreme court grants, after entry of the order, judgment, or decree. The appeal shall be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court. The name of the child shall not appear on the record on appeal."
Section 27–20–45(5) reads as follows:
"*27–20–45. Proceeding for termination of parental rights.*
   *     *     *     *     *     *
"5. Subject to the disposition of an appeal, upon the expiration of thirty days after an order terminating parental rights is issued under this section, the order cannot be questioned by any person, including the petitioner, in any manner, or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless the person retained custody of the child."
**4.** Rule 81(a) of the North Dakota Rules of Civil Procedure provides as follows:
"RULE 81. APPLICABILITY—
IN GENERAL
"*(a) Special Statutory Proceedings.* Statutory procedures, whether or not listed in Table A*, are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules."
Table A, special statutory procedure under Rule 81, excepts the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., from the Rules of Civil Procedure.
**5.** Our civil rules were initially adopted prior to the 1976 amendments of the Judicial Article of

and will not be disturbed on appeal unless that court abused its discretion. *First National Bank of Crosby v. Bjorgen,* 389 N.W.2d 789, 794 (N.D.1986).

In *Bjorgen,* 389 N.W.2d at 794–95, we stated the appropriate criteria to determine an abuse of discretion as follows:

"An abuse of discretion by the trial court is never assumed and must be affirmatively established. *Dvorak v. Dvorak,* 329 N.W.2d 868, 870 (N.D.1983); *Avco Financial Services v. Schroeder,* 318 N.W.2d 910, 912 (N.D.1982). An

the North Dakota Constitution. Subsequent to November 1976, rules promulgated by our Court prevail over procedural rules enacted by the Legislature. Article VI, Section 3, of the North Dakota Constitution authorizes the Supreme Court to promulgate rules of procedure and supersede procedural statutes. Section 3 provides in part as follows:
"The supreme court shall have authority to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state...." N.D. Const. art. VI, § 3.
Rule 81(a), N.D.R.Civ.P., has an effective date of July 1, 1957. *See* Rule 86, N.D.R.Civ.P. The Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., was enacted by the Legislature in 1969. Rule 60(b)(i)–(v), is consistent with Section 27–20–37 when it allows a court order to be vacated for fraud, mistake, newly discovered evidence or lack of jurisdiction; however, Rule 60(b)(vi) differs from Section 27–20–37 through its provision that authorizes relief for "any other reason justifying relief from the operation of the judgment." We have used Rule 60(b)(vi) to grant relief only in extraordinary cases. *See Bjorgen,* 389 N.W.2d at 795. As Article VI, Section 3, authorizes this court to adopt procedural rules, it follows that we must have authority to supersede, alter, or expand procedural statutes. Although we have not amended Rule 81(a) or Table A, N.D.R.Civ.P., by deleting Chapter 27–20, N.D.C.C., from Table A and including it in Table B, we have, in the interests of justice, attempted to determine whether or not the Petitioner in this case would be entitled to any relief if we were to apply Rule 60(b)(vi), N.D.R.Civ.P. We have done this on the theory that Rule 60(b)(vi) might afford relief in extraordinary cases where Section 27–20–37 would not apply. In this case, Sally does not allege fraud, mistake, lack of jurisdiction or newly discovered evidence that would permit the district court to vacate the parental termination order under Section 27–20–37 or the first five enumerated reasons in Rule 60(b).

abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Dvorak*, 329 N.W.2d at 870; *Avco*, 318 N.W.2d at 912. A movant for relief under Rule 60(b) has a burden of establishing sufficient grounds for disturbing the finality of the judgment. *Avco, id.; Gajewski v. Bratcher*, 240 N.W.2d 871, 886 (N.D.1976). The moving party must also show more than that the lower court made a 'poor' decision, but that it positively abused the discretion it has in administering the rule. *Bender v. Liebelt*, 303 N.W.2d 316, 318 (N.D.1981). We will not overturn that court's decision merely because it is not the one we may have made if we were deciding the motion. [State Bank of Burleigh County Trust v.] *Patten*, 357 N.W.2d [239] at 242 [ (N.D. 1984) ]; [State v.] *Red Arrow* [Towbar Sales Co.], 298 N.W.2d [514] at 516 [ (N.D.1980) ].

"In addressing Bjorgen's 60(b)(vi) argument, it is helpful to review the decisions of this Court which have found an abuse of discretion on the part of the trial court in refusing to vacate a judgment under Rule 60(b)(vi). While we have affirmed the trial court in the vast majority of cases, we have, on occasion, found an abuse of discretion and reversed the trial court. *See, Galloway v. Galloway*, 281 N.W.2d 804 (N.D.1979); *Gajewski v. Bratcher*, 240 N.W.2d 871; *Kinsella v. Kinsella*, 181 N.W.2d 764 (N.D.1970); *In re Estate of Jensen*, 162 N.W.2d 861 (N.D.1968); *In re Braun*, 145 N.W.2d 482 (N.D.1966); *United Accounts, Inc. v. Lantz*, 145 N.W.2d 488 (N.D.1966)."

▮ In *Braun* we permitted an appellant who was determined by a juvenile court to be a juvenile delinquent and who was committed to the State Industrial School to move for relief under Rule 60(b)(vi). *In re Braun*, 145 N.W.2d at 484–85. In *Braun* we said:

"Regardless of the question whether the motions for new trial and the notice of appeal to this court were or were not timely made, we are of the opinion that Rule 60(b)(6), *supra*, should be invoked in this case in the interests of justice and for the best interests of the minor and the State of North Dakota." 145 N.W.2d at 485.

Likewise we believe that in the interests of justice we should consider the merits of Sally's appeal of the district court's denial of her motion to vacate the order terminating her parental rights in David. Thus the issue presented is whether or not the district court abused its discretion in denying Sally's motion to vacate the order terminating her parental rights.

▮ Sally argues that the district court abused its discretion by denying her motion to vacate because she was not adequately represented by independent counsel in the hearing terminating her parental rights. In support of her contention she relies upon Section 27-20-26, N.D.C.C,[6] which

---

**6.** Section 27-20-26, N.D.C.C., reads as follows:
*"Right to counsel.—*
"1. Except as otherwise provided under this chapter, a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and, if as a needy person he is unable to employ counsel, to have the court provide counsel for him. If a party appears without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if he is a needy person. The court may continue the proceeding to enable a party to obtain counsel and shall provide counsel for an unrepresented needy person upon his request. Counsel must be provided for a child not represented by his parent, guardian, or custodian. If the interests of two or more parties conflict separate counsel shall be provided for each of them.
"2. A needy person is one who at the time of requesting counsel is unable, without undue financial hardship, to provide for full payment of legal counsel and all other necessary expenses for representation. A child is not to be considered needy under this section if his parents or parent can, without undue financial hardship, provide full payment for legal counsel and other expenses of representation. Any parent entitled to the custody of a child involved in a proceeding under this chapter shall, unless undue financial hardship would ensue, be responsible for providing legal counsel and for paying other necessary expenses of representation for their child. The court may enforce performance of this duty

she believes under the circumstances of her case required the court to provide her with counsel. She asserts that the district court erred by not ascertaining whether she was represented by counsel. She argues that she was entitled to court-appointed counsel as a needy person and that the court also erred by not informing her of this right.

Section 27–20–26 provides that "[i]f the interests of two or more parties conflict separate counsel shall be provided for each of them." The record reflects that the adverse party at the time of the hearing was Brian due to his anticipated contest of Sally's petition to terminate her and Brian's parental rights in David. The directive in Section 27–20–26 relative to appointment of counsel provides that "[i]f a party appears without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if he is a needy person."

We think it was reasonable for the court to have concluded from the circumstances of this case that Sally was represented by Ms. Howard. The district court in its findings of fact and order terminating parental rights on May 19, 1986, stated that the Petitioner, Sally, appeared "in person and by her attorney, Judith E. Howard." Sally asserts that neither the court nor Ms. Howard informed her that Ms. Howard was representing her and thus it is apparent she did not have counsel and, accordingly, Section 27–20–06 was not complied with. We do not think it was necessary for the court to inform her of the right to assigned counsel at state expense if she in fact had counsel, and we believe, as earlier stated, it was reasonable for the court to conclude she was represented by counsel.

Sally also argues that she was not represented by independent counsel because Catholic Family Services hired and paid Ms. Howard to represent her. Apparently, Sally relies upon EC 5–22 of the Code of Professional Responsibility to imply that Ms. Howard was representing Catholic

Family Services. EC 5–22 provides that "if a lawyer is compensated from a source other than his client, he may feel a sense of responsibility to someone other than his client."

Although Ms. Howard does state in her affidavit that she "was hired by Catholic Family Services and paid by that agency to represent the Petitioner at the termination hearing," she further states that she "met with the Petitioner alone before the hearing at the courthouse in Minot, North Dakota, advised the Petitioner of the legal consequences of the termination of parental rights and made certain that the Petitioner understood the nature of the action and the legal consequences thereof."

While the above statement of Ms. Howard conflicts with Sally's affidavit in which she asserts that she thought Ms. Howard was representing Catholic Family Services, a reading of the transcript indicates that Ms. Howard was present at the termination hearing to represent Sally. Ms. Howard, in response to the court's question regarding the deferral of Sally's parental termination order, replied: "There is a concern on our part that [B.G.W.] may try to appeal the court's decision and it has been my client's concern that if her rights are terminated but he still has rights of some sort that then his rights would be superior to hers, so she would like for her rights to not be terminated until his time for appeal has expired."

The record establishes that at the time of the hearing, Catholic Family Services' and Sally's interests were not in conflict. It was only after Sally's "change of heart" that a conflict arose. Prior thereto Catholic Family Services had apparently paid her hospital delivery expenses along with other expenses incidental to the birth of her son.

In the hearing, Sally testified that it was in the best interests of her child and the public that her rights in her son David and the rights of the putative father Brian, be terminated and that the child be placed for

by appropriate order. As used in this subsection, the word 'parent' includes adoptive par-      ents."

adoption. Sally read and signed a consent form terminating her parental rights in David. Prior to signing the consent form, Sally was told by Ms. Howard that if she had any questions about the form, she should ask Ms. Howard or the court. Sally did not ask any questions.

At the close of the testimony given by Sally, Ms. Howard requested that the court preserve the testimony and withhold issuing an order terminating Sally's rights until the putative father's right to appeal had expired. The court explained that it would so delay the termination of her rights so that in the event that the putative father's rights were not terminated, Sally would share in those rights, but if the putative father failed to appeal, or if he appealed and the Supreme Court affirmed the termination, the court would terminate her rights. Prior to excusing Sally as a witness, the court asked her if she had "any question about anything that hasn't been asked?" Her reply was "No."

It is quite apparent from reading the transcript of the hearing, initiated by Sally's petition, that Ms. Howard was speaking for Sally and urging that her rights not be terminated until after the question of the putative father's rights in David were settled. We cannot conclude from the record of the termination hearing nor from the affidavits filed by Sally and Ms. Howard in conjunction with the 60(b) motion that the district court abused its discretion by denying Sally's motion to vacate the order terminating her parental rights under the circumstances of this case. We believe that Sally was effectively represented by counsel at the termination hearing and conclude that the fact that she later changed her mind as to her desire to terminate her rights in her son does not justify a finding that the trial court abused its discretion in not granting the motion to vacate.

For the reasons herein stated the decision of the district court is affirmed.

VANDE WALLE and GIERKE, JJ., concur.

LEVINE, Justice, concurring specially.

I am not sure whether the argument on appeal is that lack of independent counsel created a fiction so that what appeared to be a voluntary termination of parental rights was not, or whether lack of independent counsel resulted in a failure to protect petitioner from the consequences of her own choice, or whether petitioner's choice was not in fact freely exercised. Unfortunately, the record supports none of the above, whatever their merit. I therefore join in the majority opinion.

There was no hearing on the motion to vacate the termination order. We are, therefore, in the dark about what counseling Sally received from the agency and Attorney Howard. We have only the cryptic affidavits of Attorney Howard and Sally from which to determine whether the trial court abused its discretion in concluding that Sally was not denied effective assistance of counsel.

Sally claims she did not know Attorney Howard was representing her and she did not consult with an attorney prior to or during the termination hearing. Attorney Howard's affidavit states that she met with Sally at the courthouse prior to the hearing, advised Sally of the legal consequences of the termination of parental rights and made certain that Sally understood the nature of the action and its legal consequences. The record does not reflect what, if anything, Sally would have done differently on or before the date of the termination hearing, had she understood that Attorney Howard was her attorney. *See State v. Micko*, 393 N.W.2d 741, 747 (N.D. 1986) (claim of ineffective assistance of counsel requires proof that but for counsel's conduct, the result of the proceeding would have been different). Nor does the record disclose why Sally voluntarily consented to termination of her parental rights or why she testified that it was in the child's best interest for Sally's parental rights to be terminated. All that the record discloses is that Sally, after receiving counseling from an agency social worker, petitioned the court to terminate her

parental rights, testified that it would be in the child's best interests for those rights to be terminated and signed the consent document before the judge. Based upon the record before us, I do not believe the district court abused its discretion. However, the practice of an adoption agency's hiring an attorney for a mother who wishes to terminate parental rights and employs the agency to accomplish her goal, raises troublesome policy and ethical considerations.

A party is entitled to counsel at all stages of any proceeding under the North Dakota Juvenile Court Act. North Dakota Century Code § 27–20–26. Parental termination procedures are a part of the Juvenile Court Act, NDCC § 27–20–44, and the right to counsel extends to parties involved in such proceedings. *In re J.Z.*, 190 N.W.2d 27, 31 (N.D.1971). Thus, Sally had a statutory right to counsel at all stages of the termination proceeding.

The right to counsel includes the right to effective assistance of counsel. *State v. Micko, supra* at 746. Further, an individual's right to effective assistance of counsel entitles him to the undivided loyalty of his attorney. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). While the issue of the right to counsel has arisen primarily in the criminal law arena, a person entitled to an attorney in a civil action is equally deserving of the undivided loyalty of that attorney. *See In re Lackey*, 71 Ill.App.3d 705, 28 Ill.Dec. 352, 390 N.E.2d 519 (1979), aff'd 79 Ill.2d 466, 39 Ill.Dec. 769, 405 N.E.2d 748 (1980) (court found reversible error where parents in a civil termination case did not receive undivided loyalty from their appointed counsel).

Canon 5 of the Code of Professional Responsibility provides that "[a] lawyer should exercise independent professional judgment on behalf of a client." A lawyer compensated from a source other than a client, may feel a sense of responsibility to someone other than that client. Code of Professional Responsibility EC 5–22 (1986). Under Rule 1.7(c)(2) of the proposed North Dakota Rules of Professional Conduct, a lawyer retained by a third party must re-

ceive prior consent of the client "after consultation" with the client, if the representation of that client "might be" adversely affected by the lawyer's responsibility to the third person. The comment points out that loyalty is an essential element in the lawyer's relationship to a client. It explains that loyalty is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other interests. The conflict, in effect, "forecloses alternatives that would otherwise be available to the client."

A lawyer fulfills various functions in the course of representing a client, not the least of which is counseling. Indeed, it has been said that "a truly great lawyer is a wise counselor to all manner of men in the varied crises of their lives when they most need disinterested advice." Vanderbilt, *Five Functions of the Lawyer: Service to Clients and Public*, 40 ABAJ 31 (1954). I have no doubt that Sally's attorney advised Sally of the legal consequences of the termination of parental rights. However, I am afraid that any attorney, retained by an adoption agency to represent a client in a voluntary termination proceeding, may feel foreclosed from counseling as to alternatives and instead view the representation to involve merely the mechanical function of explaining "legal rights" and interrogating the mother at the hearing. The record does not disclose what counseling Sally received from the social worker at the adoption agency. Nor does it disclose whether Sally considered keeping the child and if so, why she chose not to, or whether there was any such discussion between Sally and her attorney. An attorney's conduct is presumed to be reasonable and it is up to the client to show that her representation fell below an objective standard of reasonableness. *See State v. Micko, supra* at 747. Even so, I remain uneasy about the inherent tension between the duty to counsel a client and the responsibility to the entity that hired and paid you. Meeting with the client immediately before a termination of parental rights hearing for the first and only time does not allay the perception of

lack of independent counsel. It fortifies my concern that providing counsel under such circumstances is but a perfunctory observance of a meaningless ritual.

I understand that the record supports in its entirety the proposition that this was a voluntary termination of parental rights. However, the adoption agency is in the business, if you will, of obtaining babies for adoption. It paid for Sally's hospitalization and doctor. It counseled Sally prior to her decision to terminate. It paid for Sally's attorney to institute the termination proceedings and represent her at the hearing. I believe that there is inherent in this process a serious flaw, whether real or perceived. While an agency's advising or attempting to persuade a parent to consent to termination of parental rights does not constitute duress, *see Anonymous v. Anonymous*, 23 Ariz.App. 50, 530 P.2d 896 (1975), a mother contemplating termination of her parental rights needs distance from the agency having an interest in that decision. *See, e.g., In re Perry*, 31 Wash.App. 268, 641 P.2d 178 (1982). The means available to insure that distance is an attorney with no connection to the adoption agency. Included in my definition of an attorney with "no connection" is an attorney not hired or paid by the adoption agency.

As a policy matter, the perception that justice is done is as important as whether justice in fact is done. It would, in my view, be more than merely cosmetic, however, to provide that counsel for a parent who wishes to voluntarily terminate parental rights should not be paid for or retained by an adoption agency absent full, fair disclosure before the fact to the mother. The disclosure given should be made part of the record of the hearing. If the parent who declines an agency's offer to provide counsel after full and fair disclosure cannot afford to retain counsel, the trial court should appoint counsel and afford sufficient time to meet and consult with the parent before the commencement of termination proceedings.

The record does not explain Sally's change of mind. Nor does the law require that Sally's consent to termination be "free from emotion, tension, and pressures." *See In re Surrender of Minor Children*, 344 Mass. 230, 181 N.E.2d 836, 839 (1962). I therefore concur.

MESCHKE, Justice, dissenting.

I respectfully dissent for the reasons expressed so well in the special concurrence of Justice Levine. I stress the fact that Sally left the hearing without any certainty that her parental rights were terminated under the delayed judgment procedure planned. When she did not hear from "her" attorney that a "final" judgment had been entered as to her, it is not surprising that she made further inquiries and, after independent legal advice, changed her mind about a matter so fundamental.

I would hold that Sally was not adequately represented by independent counsel, and, therefore, her Rule 60(b) motion should have been granted. This is not merely a commercial matter to be weighed on the same scales as in *First National Bank of Crosby v. Bjorgen*, 389 N.W.2d 789 (N.D. 1986).