2002 ND 207

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John Clark WEISZ, Defendant and Appellant.**

**No. 20020115.**

Supreme Court of North Dakota.

Dec. 20, 2002.

Terry W. Elhard, State's Attorney, Ashley, ND, for plaintiff and appellee.

David N. Ogren, Herr & Ogren, Wishek, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] John C. Weisz appealed from a criminal judgment and commitment find-

ing him guilty of two counts of terrorizing. We affirm.

## I

[¶ 2] On March 3, 2001, Weisz drove his pickup truck from a bar in Logan County and eventually proceeded into McIntosh County. Brenda Rath and Michael Schauer were also in the truck. The parties disagree about what events transpired, but as a result of Weisz's actions toward Rath and Schauer, Weisz was charged in McIntosh County with one count of harassment, two counts of aggravated assault, and two counts of terrorizing. He was also charged with two counts of simple assault in Logan County. Weisz pled guilty to the simple assault charges in Logan County.

[¶ 3] A jury trial on the McIntosh County charges began on March 5, 2002. On March 7, 2002, the jurors began deliberating and took an evening supper break at a local restaurant. According to the post-trial affidavit of juror Allen Nitschke, the following events apparently occurred during the supper break. The court staff member in charge of the jurors received a telephone call and learned the wife of one of the jurors had been hurt. The juror was called to the telephone and received a message his wife had been injured by a cow and hospitalized. The jurors decided to continue deliberating, and later in the evening, the jury returned a verdict finding Weisz guilty of two counts of terrorizing.

[¶ 4] The record demonstrates no one notified the trial judge of the telephone call. Apparently after the trial, juror Nitschke told Weisz's trial counsel about the telephone call. At sentencing, trial counsel attempted to offer Nitschke's testimony, not for the purpose of bringing to the court's attention the telephone call, but for the following reason:

[W]hat I would like to offer is testimony by the juror which would establish the basis for that verdict that they entered. And it is—Your Honor, based upon the instructions that were given by the Court, it appears that the elements of the offense and the instructions were disregarded when the jury reached the verdict. That might have been their verdict, Your Honor, but it appears that they did not follow the instructions.

The trial judge refused to hear juror Nitschke's testimony for this purpose or allow him to testify as a character witness for Weisz. In September 2002, Nitschke signed an affidavit describing the events at the restaurant. On appeal, with different representation, Weisz raises the specific issue of the juror communication for the first time.

[¶ 5] Weisz argues the telephone call violated N.D.C.C. § 29–22–02 as an impermissible juror communication. He asserts this is reversible error due to the likelihood he did not receive a fair jury deliberation. He also argues the State violated his rights against being placed in double jeopardy when the McIntosh County trial proceeded on aggravated assault charges because he had already pled guilty in Logan County to simple assault charges stemming from the same incident.

## II

### A

[¶ 6] On appeal, we generally do not consider issues, even constitutional issues, not raised before the trial court. *State v. Kensmoe,* 2001 ND 190, ¶ 17, 636 N.W.2d 183. "One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it." *State v. Osier,* 1999 ND 28, ¶ 14, 590 N.W.2d 205. As previously noted, the

juror communication in this case was never brought to the attention of the trial court. Because Weisz did not properly preserve the issue for appeal, our review is limited to obvious error which requires a demonstration of "obvious error which affects substantial rights of the defendant." *State v. Jones*, 557 N.W.2d 375, 378 (N.D.1996) (quoting *State v. Thiel*, 411 N.W.2d 66, 70 (N.D.1987)); N.D.R.Crim.P. 52(b). However, we exercise our authority to notice obvious error cautiously and only in exceptional circumstances when the defendant has suffered serious injustice. *State v. Mertz*, 514 N.W.2d 662, 670 (N.D.1994) (citing *State v. Kopp*, 419 N.W.2d 169 (N.D.1988)).

B

[¶ 7] The error alleged by Weisz is a violation of N.D.C.C. § 29–22–02, which states the procedure for the custody of jurors:

> The jurors shall retire in charge of one or more officers who must be sworn to keep them together in some private and convenient place until they have rendered their verdict. Such officer or officers shall furnish food and other necessaries to the jurors, at the expense of the state, as directed by the court, and may not speak to nor communicate with such jurors or any of them nor permit any other person so to do except by order of the court. Men and women jurors may retire, when rest or sleep or propriety requires it, to separate rooms.

Following a literal reading of § 29–22–02, absent a court order, any communication with or by a jury member during the process of deliberating would violate the statute. However, the intention of § 29–22–02 is to ensure extraneous influences and communications do not taint jury deliberations. *See State v. Bergeron*, 340 N.W.2d 51, 58 (N.D.1983) (stating "the

State and the court, independently, have an interest and obligation to assure that the jury reaches a verdict free of extraneous pressures, strain, or discomfort").

[¶ 8] In *State v. Julson*, 202 N.W.2d 145, 155 (N.D.1972), the defendant alleged a violation of N.D.C.C. § 29–22–02 when jurors were transported in separate vehicles to a restaurant, after the case was submitted to them. We stated no prejudice resulted from the separation of the jurors, and because no improper influences were used or attempted during the separation, this was not a basis for a new trial. *Julson*, at 155–56. Furthermore, in *State v. Bergeron*, 340 N.W.2d 51, 58 (N.D.1983), we examined § 29–22–02 in the context of jury sequestration. In discussing a similar Nebraska statute, we noted the Nebraska Supreme Court held a failure to comply with its statute would create a rebuttable presumption of prejudice. *Bergeron*, at 58–59; *see also State v. Robbins*, 205 Neb. 226, 287 N.W.2d 55, 58 (1980) (construing Neb.Rev.Stat. § 29–2022 (1943)). We declined to establish this presumption, stating "mere reliance upon N.D.C.C. § 29–22–02 without a showing of actual prejudice is insufficient." *Bergeron*, at 59.

[¶ 9] As we have previously stated, "a defendant is entitled to a fair trial but not necessarily to a perfect trial." *State v. Ellvanger*, 453 N.W.2d 810, 815 (N.D.1990) (quoting *State v. Allen*, 237 N.W.2d 154, 162 (N.D.1975)). In order to obtain a new trial, Weisz would have to show he had been prejudiced in some way by the error. *Keyes v. Amundson*, 343 N.W.2d 78, 82 (N.D.1983) (citing *State v. Bergeron*, 340 N.W.2d 51, 59 (N.D.1983)). An individual cannot rely upon mere technical violations of the statute without a showing of prejudice. *Id.*

[¶ 10] Assuming the events occurred exactly as juror Nitschke described, the telephone message received by

the other juror was unrelated to the case. There is nothing in the affidavit indicating the jurors' deliberations were affected by the telephone call. After examining the transcript of the trial court proceedings, we cannot say a jury which began deliberating at 11:47 a.m., took a supper break around 5:05 p.m., sent the judge a written question at approximately 7:20 p.m., and returned its verdict just before 8:00 p.m., failed to fairly deliberate—due to a telephone call which occurred during the supper break. "In the absence of contrary evidence, a presumption exists that a jury performed its duties in accordance with the law and were not influenced by outside events or evidence." *State v. Osier,* 1999 ND 28, ¶ 24, 590 N.W.2d 205 (quoting *State v. Voeller,* 356 N.W.2d 115, 121 (N.D. 1984)).

[¶ 11] While the telephone call in this case was an impermissible communication under N.D.C.C. § 29–22–02, it does not rise to the level of a denial of a fair trial. Weisz has not shown prejudice or demonstrated he suffered a serious injustice by a juror allegedly receiving a telephone call and discussing a family situation, while on a dinner break from deliberations. *See* Diane M. Allen, Annotation, Communication Between Court Officials or Attendants and Jurors in Criminal Trial as Ground for Mistrial or Reversal—Post–Parker Cases, 35 A.L.R.4th 890, § 16 (1985) (summarizing cases in which communications between jurors and court personnel about a juror's personal affairs did not justify a mistrial or reversal). Thus, we conclude the juror communication does not constitute obvious error.

C

[¶ 12] Because of the presence of a juror affidavit and a trial irregularity in this case, we briefly discuss these general issues. Rule 606(b), N.D.R.Ev., governs a

juror's ability to testify regarding the validity of a verdict. *See* N.D.R.Ev. 606(b) (allowing jurors to testify whether extraneous prejudicial information was brought to their attention, outside influences were brought to bear upon them, or they arrived at the verdict by chance, but prohibiting them from testifying about the mental processes inherent in arriving at the verdict). In *State v. Clark,* 1997 ND 199, ¶ 8, 570 N.W.2d 195, *cert. denied,* 532 U.S. 1043, 121 S.Ct. 2010, 149 L.Ed.2d 1011 (2001), we reviewed the use of juror affidavits under N.D.R.Ev. 606(b):

> [J]uror affidavits "may be used to show juror misconduct based upon extraneous prejudicial information, outside influence, or a chance verdict," but may not be used to show "the effect of the misconduct on the jury." *Keyes v. Amundson,* 343 N.W.2d 78, 84–5 (N.D.1983). "Our decisions have consistently rejected jurors' affidavits about the effect of internal deliberations." *Miller v. Breidenbach,* 520 N.W.2d 869, 872 (N.D.1994). *See also Kerzmann v. Rohweder,* 321 N.W.2d 84 (N.D.1982); *Grenz v. Werre,* 129 N.W.2d 681 (N.D.1964). "It is improper for a court to consider juror affidavits for purposes of impeaching a verdict relative to the mental processes or reasoning of the jurors in arriving at a decision." *Mauch v. Manufacturers Sales & Serv., Inc.,* 345 N.W.2d 338, 343 (N.D.1984). "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *Andrews v. O'Hearn,* 387 N.W.2d 716, 719 (N.D.1986).

*See, e.g., Keyes v. Amundson,* 343 N.W.2d 78, 85–87 (N.D.1983) (reversing denial of a new trial when juror misconduct was discovered after the verdict through juror affidavits demonstrating extraneous prejudicial information had reached the jury

during deliberations); *cf. Hamilton v. Oppen*, 2002 ND 185, ¶ 34, 653 N.W.2d 678, (Vande Walle, C.J., concurring in denial of new trial when juror affidavits insufficient to show juror misconduct and no evidentiary hearing was requested).

■ [¶ 13] Furthermore, when an irregularity occurs during trial, the affected party must bring the problem to the trial court's attention when the irregularity occurs so the court may take appropriate action. *State v. Breding*, 526 N.W.2d 465, 472 (N.D.1995) (citing *State v. Abrahamson*, 328 N.W.2d 213, 219 (N.D.1982)). Trial irregularities, brought to the attention of counsel after the verdict, should be addressed by a motion to the trial court with supporting evidence. *See* N.D.R.Crim.P. 33(c) (describing the procedure for moving for a new trial because of jury misconduct or any other grounds besides newly discovered evidence). Here, the irregularity was never brought to the attention of the trial court.

## III

[¶ 14] Weisz also argues the prosecution of aggravated assault charges in McIntosh County should have been barred by his conviction, by plea agreement, of simple assault in Logan County. We addressed similar arguments in *State v. Lange*, 497 N.W.2d 83 (N.D.1993), and *State v. Pendergrast*, 340 N.W.2d 454 (N.D.1983). In *Lange*, we held the double jeopardy clause was not violated when the defendant was tried in two different counties on rape charges when he allegedly raped the complainant in Mercer County and then drove into Oliver County and assaulted her again. *Lange*, at 84, 86–87. ("[T]he Oliver County rape was a separate and distinct act which involved a separate and distinct determination of consent, and ... the Oliver County verdict was not based upon the same issue as determined by the Mercer County jury"). In *Pendergrast*, the defendant pled guilty in Dickey County to violating a statute prohibiting referral and chain selling. *Pendergrast*, at 455. The State then charged the defendant in Stutsman County for violating the same statute, and a jury found him guilty. *Id.* In considering the defendant's double jeopardy argument, we stated two violations of the same statute were separate offenses because they were committed at different times and places. *Id.* at 456.

■ [¶ 15] In this case, the State presented evidence to the jury showing Weisz committed a more severe assault on Rath and Schauer after he drove from Logan County into McIntosh County. Following our reasoning in *Lange* and *Pendergrast*, we conclude Weisz was not placed in jeopardy for the same crime when he was prosecuted in McIntosh County on aggravated assault charges after pleading guilty to simple assault charges in Logan County.

## IV

[¶ 16] Because the juror communication was not an obvious error which affected Weisz's substantial rights, and because Weisz's rights against being placed in double jeopardy were not violated, we affirm the criminal judgment and commitment.

[¶ 17] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN and MARY MUEHLEN MARING.