2011 ND 131

**STATE of North Dakota, Plaintiff
and Appellee**

v.

**Ivan Lee AABREKKE, Defendant
and Appellant.**

No. 20100170.

Supreme Court of North Dakota.

July 13, 2011.

James Peter Wang, State's Attorney, Minnewaukan, N.D., for plaintiff and appellee.

Ulysses Samuel Jones, Devils Lake, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Ivan Lee Aabrekke appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition and from the denial of his motions for a new trial and for a judgment of acquittal. We reverse and remand, holding the district court failed to correctly apply the law regarding the admissibility of evidence of prior bad acts.

I

[¶ 2] The State charged Aabrekke with gross sexual imposition under N.D.C.C. § 12.1–20–03(1)(d) for allegedly engaging in a sexual act with his thirteen-year-old granddaughter at his Minnewaukan home on August 16, 2009. Based on recorded statements and testimony at a preliminary hearing and without formal pretrial notice from the State as required under N.D.R.Ev. 404(b), Aabrekke moved to prevent the State from introducing evidence that he "has a history of engaging in various types of sexual activity with the [complainant] and that this activity has occurred over the years" and that "relatives of [Aabrekke] may have engaged in sexual acts with either the [complainant], or the [complainant's] mother." The district court denied Aabrekke's pretrial motion and ruled the evidence may be admissible at trial to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 3] At trial, the complainant testified Aabrekke used what was described as a "penis pump" to engage in a sexual act with her on the morning of August 16, 2009, while she, her mother and her brother were staying at Aabrekke's house for the weekend. The complainant's mother is Aabrekke's daughter, and the complainant testified she did not tell her mother about the incident until after they returned to their Minnesota home because she knew Aabrekke "would deny it and say [mean] stuff." The complainant's mother reported the incident to Minnesota authorities, and the complainant provided statements about the incident to officials from Minnesota and North Dakota. A subsequent search of Aabrekke's home resulted in the seizure of a "penis pump." After the complainant testified at trial about the August 16, 2009 incident, the State asked the com-

plainant whether she had ever told her mother about any sexual contacts made against her before that incident. The following colloquy occurred outside the presence of the jury:

"THE COURT: Okay, first what I want to hear from you, Mr. Wang, is what specifically are you soliciting with regard to the testimony you were getting from the witness?

"MR. WANG: Certainly. She had just described a horrifically significant act that has occurred in her life, and she leaves and goes to her mother and cries and doesn't tell her mother about this. The fact is she has disclosed before, some nearly two years earlier, and it created a tremendous fracas in the family and—

"THE COURT: What was the event that supposedly occurred two years earlier?

"MR. WANG: There was digital penetration.

"THE COURT: By Mr. Aabrekke?

"MR. WANG: By or alleged by Mr. Aabrekke. Digital penetration which went on for a period of two years every month that she was there. Now that she reaches the age of thirteen, that's when we have this—the act of—the sexual act.

"THE COURT: So it's continuing.

"MR. WANG: So it's continuing. But there was disclosure made two years ago. The mother's testimony—the witness's mother—will be that she confronted grandma and we believe the whole thing was taken care of. Now this girl is going to be attacked because they believe she's lying. The only way that I can show the planning, the preparation, the intense grooming that led up to the events of the August 2009 weekend is to put that in. The jury is going to be sitting there, My God what's

wrong with this victim? She didn't tell her mother. She waited a couple days. Why?

"THE COURT: Okay and—

"MR. WANG: That why can be answered.

"THE COURT: So she—you're going to have mother testify about these events also?

"MR. WANG: She will.

"THE COURT: And about the confrontation with the family?

"MR. WANG: Mother will testify about the earlier disclosure that she thought she had, you know, mom and dad, grandpa and grandma convinced or in—

"THE COURT: Mm-hmm.

"MR. WANG:—in tune that this is under control.

"THE COURT: Okay.

"MR. WANG: And she's also going to testify that she believed that grandpa was impotent and that this wasn't going to be an issue.

"THE COURT: Okay, Mr. Jones, your objection then is what?

"MR. JONES: Okay, I did not object to the question that was asked because it was not a question directed specifically as to the defendant. The question was, have you ever told your mother— something to the effect of have you ever told your mother about bad touches before.

"THE COURT: Okay.

"MR. JONES: Okay, that's one thing. But not only did the witness start to answer the question, which could have been answered yes or no, the witness began at that point to discuss what are allegations of—

"THE COURT: Okay, Mr. Jones, so your argument is that he can't even

raise this with regard to the allegation of vaginal penetration?

"MR. JONES: Okay—

"THE COURT: Even if it was Mr. Aabrekke?

"MR. JONES: Our argument, Your Honor, is that evidence—as Rule 404 says, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

"THE COURT: That's not showing character. That's showing a—

"MR. WANG: Pattern.

"THE COURT: Of conduct.

"MR. JONES: Okay, it says, However, it may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"MR. WANG: Thank you.

"THE COURT: Right.

"MR. JONES: Our position is that what they are attempting to do—and what they are attempting to do is to basically allege that there were prior acts, purportedly by Mr. Aabrekke, in an effort to support the fact that the act occurred as alleged by the victim—so-called victim at the time in question.

"THE COURT: Sure.

"MR. JONES: First of all, we indicate that the elements of gross sexual imposition can be established irrespective of anything what have been—of what is alleged to have happened in the past, and when you admit allegations of prior criminal acts or prior digital penetration or whatever, prior sexual contact by the defendant and the alleged victim, all that is going to do is to poison the mind of the jury, and the probative value thereof is far outweighed by the prejudice that will occur to the defendant by the admission of such testimony.

"THE COURT: Well I think it's appropriate. The State can bring in that it's a course of action of—continuing course of action, so I think that's permissible. So go ahead, Mr. Wang.

"MR. WANG: Your Honor, this is exactly the motion which Mr. Jones had before the Court which has been ruled on. I am reading from the case law which supports that, [*State v. Paul*,] 769 Northwest Second 416 and if I can find the name of it I'll put it into the record. But evidence other—even if the prior acts constituted other crimes evidence, the trial court found that the evidence was introduced for the purpose of showing a plan or preparation, found the evidence substantially reliable in ruling that the victim's hearsay statements were admissible, noted—and the victim would testify at trial. She is going—her testimony—it is a plan, preparation, the intense grooming that went on for a period of at least two years.

"THE COURT: Okay, I'm ruling in your favor, Mr. Wang. I'm overruling the objection. I think it—in particular in the context when he goes—when she goes to the mother and doesn't tell her what happened, I think this—the State has to give an explanation as to why she didn't talk to her mother right away. So I'm—that evidence can come into the record and, Mr. Jones, if you wish to have a standing objection to this course I—you certainly may. You may have that standing objection.

"MR. JONES: Well for purposes of the record, Your Honor, we do want a standing objection to any and all testimony relative to prior—allegations of prior sexual contact."

[¶ 4] The complainant thereafter testified Aabrekke had engaged in prior sexual

contact with her beginning two years before the August 2009 incident. Additionally, the complainant testified during cross-examination:

"Q [Mr. Jones] Do you feel that your mother will protect you?

"A [The complainant] Yes.

"Q Well then did you feel that you needed protection at that time?

"A [Crying.]

"Q Well then why didn't you go to your mother before then?

"A Because she was raped by him before.

"Q Do you have personal knowledge of this?

"A Yes. She's told me.

"MR. JONES: Objection, Your Honor.

"THE COURT: You asked the question.

"Q [By Mr. Jones] So you have no personal knowledge other than what your mother has claimed?

"A [Crying.]

"MR. WANG: I think we should take a break, Your Honor."

After the recess, the complainant had not composed herself, and the court allowed the State to call two other witnesses. Thereafter, Aabrekke continued his cross-examination of the complainant:

"BY MR. JONES:

"Q Before lunch ... I think we left off with you making the statement that your mom had been raped by Mr. Aabrekke as well.

"A Yes.

"Q Do you recall that?

"A Yes.

"Q Were you present when supposedly this event took place, the event being Mr. Aabrekke raping your mother?

"A I wasn't born.

"Q You wasn't (sic) born.

"A No.

"Q So how do you know about it?

"A My mom told me.

"Q And when did your mom tell you?

. . . .

"A The Sunday we—that last Sunday.

"Q Oh, so she told you that—today is Tuesday so that would have been day before yesterday?

"A Yes."

[¶ 5] The complainant's mother testified that the complainant had told her about the prior sexual touching by Aabrekke and that the complainant's mother had confronted her mother, Aabrekke's wife, about the touching and that she believed the conduct had stopped. During the direct examination of the complainant's mother, the following colloquy occurred:

"Q [By Mr. Wang] Why do you believe it's important to keep your daughter safe?

"MR. JONES: Objection, Your Honor. That's—

"THE COURT: Overruled. You can answer the question.

"A [Complainant's mother] It's very important to me to have my kids safe because when I was younger I did not have that safety.

"Q Your mother wasn't as strong as you?

"A Exactly.

"MR. WANG: Your Honor, may counsel approach?

"THE COURT: Yes.

"[10:02 a.m. Bench Conference and off the record.]

"[10:06 a.m. In chambers, all counsel present.]

"THE COURT: Okay, we're on the record. It's the 24th day of March, 2010. An objection has been raised with regard to some questioning at trial in the State versus Aabrekke. At this point I excused the jury and, actually, we are in the library to discuss the objection.

"Essentially, Mr. Wang, what is the substance of your question and your—the substance of the response that you were expecting?

"MR. WANG: Certainly, Your Honor. The substance of where the State is going with this line of questioning is going to ask this witness—she was a victim of sexual abuse when she was approximately seven or eight. It is by a man whose name was Slim. That was revealed or told to authorities and it went to her mother, and her mother and the family did nothing about it and that—

"THE COURT: Okay so it's not—

"MR. WANG: It is not this defendant.

"THE COURT: It goes—so what you're bringing it in for is for the purpose to show that there are not strong defense mechanisms within the family?

"MR. WANG: Correct.

"THE COURT: Okay.

"MR. WANG: And I honestly mean it, I do not intend to go down the road that was opened up yesterday—surprisingly, I'm sure, to Mr. Jones—with that.

"THE COURT: Okay.

"MR. WANG: That is not my intention.

"THE COURT: Okay, Mr. Jones, based—go on your objection.

"MR. JONES: Okay, first of all, Your Honor, we have no assurance that the witness is going to understand.

"THE COURT: Well I don't know if we have any assurance either other than Mr. Wang is going to—I think, Mr. Wang, you can articulate to her beforehand that this is the object that you're trying to achieve.

"MR. WANG: I will do that.

"MR. JONES: Okay. Secondly, I object on the grounds of relevance. She has indicated that she loves her children, that she wants to protect her children, and when she starts bringing in information of additional—so to speak-criminal acts, whether or not they have been—you know, if we were looking at a situation of where there was a criminal case and the like, which would then be public knowledge, then my objection would not be as strong. But I think the—there is an objection as to relevance and there is also an objection that any kind of probative value of an answer to such a question, as the State believes it is going to get, would be far outweighed by the prejudice that Mr. Aabrekke would sustain, especially in light of the statements that ultimately were proven, you know, wrong on yesterday.

"THE COURT: Sure.

"MR. JONES: That [the complainant] made. So we're going to be, so to speak, bombarded—

"THE COURT: Well this is—this—we're not going to have a mini trial on some other charges, but I think the intent, Mr. Wang, is to show that you don't have strong defense mechanisms within the context of the family.

"MR. WANG: It's a very short line of questioning.

"THE COURT: Right. Okay, at this point—

"MR. WANG: And I will instruct this witness—and I'm not in the business of coaching, but I will let her know—

"THE COURT: That this—

"MR. WANG:—that this is where we're going and we're not going anywhere else.

"THE COURT: Okay, with that objection (sic) I'm going to overrule your objection. You can go in with that line of questioning, Mr. Wang. And at this point we're off the record.

. . . .

"THE COURT: Mr. Wang, you may proceed with your examination.

"MR. WANG: Thank you.

"Q [By Mr. Wang] . . . when you were seven or eight were you a victim of some type of sexual abuse?

"A [Complainant's mother] Yes, I was.

"Q What was that?

"A I was sexually abused by my father's uncle.

. . . .

"Q What was the nature of the abuse?

"A Inappropriate touching and I think there was some penetration. I don't remember. I was only seven.

"Q Was that information told to law enforcement or to anyone?

"A Not that I know of, uh-uh.

"Q Was it disclosed to anyone?

"A Yes, my mother was told.

"Q What did she do about it?

"A She took me to the doctor for an exam and that's about it.

. . . .

"Q So after that were you treated differently by the family?

"A Yeah.

"Q How so?

"A My dad's sisters started calling me a slut and they wouldn't let me stay at their house anymore.

"Q Okay.

"A I used to spend summers, you know, at their house.

"Q So you believe you were treated somewhat differently after you told about this?

"A Yes.

"Q And actually you didn't tell did you?

"A No, I didn't.

"Q Someone else reported it?

"A Yes, someone from town had walked in on him.

"Q And so you believe, as a mother, defensively you're better protecting [the complainant] by removing her and [her brother] from your parents' home?

"MR. JONES: Objection. Leading.

"THE COURT: I'll sustain that objection.

"Q [By Mr. Wang] Do you believe you are safeguarding your children by not letting them have contact with the grandparents?

"A Yes.

"Q Do you believe you're doing a better job of safeguarding than your mother did?

"A Yes."

[¶ 6] Aabrekke did not testify at trial, but did present other circumstantial evidence that the complainant was lying and that he had not engaged in the August 16, 2009 sexual act with the complainant. The court did not instruct the jury about the limited use of the evidence about prior sexual contact or acts, and the jury found Aabrekke guilty of gross sexual imposition. The court thereafter denied Aabrekke's post-trial motions for a new trial and for judgment of acquittal.

II

[¶ 7] Aabrekke argues the district court erred in allowing the complainant to

testify that he had engaged in prior sexual contact with her and in allowing the complainant's mother to testify about those acts and that the mother was sexually abused by Aabrekke's uncle when she was a child. Aabrekke argues the court did not use the proper three-pronged analysis for considering the admissibility of prior bad act evidence and did not give a cautionary instruction regarding the limited purpose of that evidence. Aabrekke further argues the complainant's testimony about the prior bad acts was harmful and prejudicial and should have been excluded under N.D.R.Ev. 403 because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

[¶ 8] This Court has "'warned of the dangers inherent in allowing evidence of other acts to show propensity and of tempting a jury to convict a defendant for actions other than the charged misconduct.'" *State v. Schmeets*, 2009 ND 163, ¶ 15, 772 N.W.2d 623 (quoting *State v. Ramsey*, 2005 ND 42, ¶ 19, 692 N.W.2d 498). Rule 404(b), N.D.R.Ev., outlines the general rule that evidence of other crimes, wrongs, or acts is not admissible to show a person acted in conformity therewith, but allows admission of evidence of other crimes, wrongs, or acts for other purposes, and provides:

> "*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good

cause shown, of the general nature of any such evidence it intends to introduce at trial."

The rule excludes admission of evidence of prior acts or crimes unless the evidence is substantially relevant for some purpose other than to show a person's criminal character and that the person acted in conformity with that character. *Schmeets*, at ¶ 15. The rule recognizes the inherent prejudicial effect prior bad-act evidence may have on the trier of fact and limits the admissibility of that evidence to specifically recognized exceptions. *State v. Micko*, 393 N.W.2d 741, 744 (N.D.1986).

[¶ 9] In considering evidence of other prior crimes, wrongs or bad acts, the mere invocation of an exception does not end the inquiry; rather, our decisions consistently have recognized that a district court must apply a three-step analysis to determine whether the evidence is admissible:

> "'1) the court must look to the purpose for which the evidence is introduced; 2) the evidence of the prior act or acts must be substantially reliable or clear and convincing; and 3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented, without consideration of the evidence of the prior acts.'"

*State v. Paul*, 2009 ND 120, ¶ 18, 769 N.W.2d 416 (quoting *State v. Alvarado*, 2008 ND 203, ¶ 14, 757 N.W.2d 570). *See also State v. Buckley*, 2010 ND 248, ¶ 34, 792 N.W.2d 518; *Schmeets*, 2009 ND 163, ¶ 15, 772 N.W.2d 623; *State v. Gaede*, 2007 ND 125, ¶ 26, 736 N.W.2d 418; *State v. Parisien*, 2005 ND 152, ¶ 25, 703 N.W.2d 306; *State v. Hatlewick*, 2005 ND 125, ¶ 9, 700 N.W.2d 717; *Ramsey*, 2005 ND 42, ¶ 23, 692 N.W.2d 498; *State v. Christensen*, 1997 ND 57, ¶ 7, 561 N.W.2d 631; *Micko*, 393 N.W.2d at 744.

■ [¶ 10] We have also recognized that the final step in the three-pronged analysis usually may be satisfied with a cautionary instruction about the admissibility of the evidence for a limited purpose. *Micko,* 393 N.W.2d at 744. *See also Paul,* 2009 ND 120, ¶ 27, 769 N.W.2d 416; *Ramsey,* 2005 ND 42, ¶ 29, 692 N.W.2d 498. "If a district court concludes this three-part test has been satisfied, the evidence is not automatically admissible, and the court must also consider whether, under N.D.R.Ev. 403, the probative value of the evidence outweighs any possible prejudicial effect." *Gaede,* 2007 ND 125, ¶ 26, 736 N.W.2d 418; *Ramsey,* at ¶¶ 25–26; *Micko,* at 744–45.

■ [¶ 11] "We review a district court's evidentiary rulings under N.D.R.Ev. 404(b) [and 403] under the abuse of discretion standard." *Paul,* 2009 ND 120, ¶ 18, 769 N.W.2d 416; *Gaede,* 2007 ND 125, ¶ 27, 736 N.W.2d 418. "A district court abuses its discretion when its decision is arbitrary, capricious, or unreasonable, or when the court misapplies or misinterprets the law." *Gaede,* at ¶ 27.

■ [¶ 12] An accused's prior sexual contact or act with a complainant may not always be evidence of other separate and independent crimes under N.D.R.Ev. 404(b). *Paul,* 2009 ND 120, ¶¶ 24–25, 769 N.W.2d 416; *Christensen,* 1997 ND 57, ¶¶ 6–8, 561 N.W.2d 631. *See also Alvarado,* 2008 ND 203, ¶¶ 10–12, 757 N.W.2d 570 (holding district court did not abuse discretion in admitting prior acts of domestic violence in prosecution for felonious restraint; prior acts were not independent acts, but were evidence of activity in furtherance of same criminal activity). In *Paul,* 2009 ND 120, ¶ 25, 769 N.W.2d 416, we explained that evidence of an accused's prior acts of sexual abuse of a complainant 14 months before the charged crime was not evidence of other separate and independent crimes under N.D.R.Ev. 404(b), but constituted evidence of activity in furtherance of the same criminal activity. We held "the district court did not abuse its discretion in ruling the evidence was not N.D.R.Ev. 404(b) evidence and in allowing its admission." *Paul,* at ¶ 25. We also explained that even if the accused's prior acts with the complainant constituted "other crimes" evidence under N.D.R.Ev. 404(b), the evidence was admissible under an exception to the rule because it showed the accused's plan, preparation and pattern of the same activity with the same person. *Paul,* at ¶¶ 26–27. We said the district court's analysis was not deficient, because the court's ruling on the substantial reliability of the prior act evidence and the requirement for proof independent of the crime charged under N.D.R.Ev. 404(b) came immediately after the court's ruling on the trustworthiness of the complainant's hearsay statements under N.D.R.Ev. 803(24). *Paul,* at ¶ 27. We further recognized the district court decided the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under N.D.R.Ev. 403 and the court also gave a limiting instruction on the permissible purposes of the prior acts evidence during the trial and in the final jury instructions. *Paul,* at ¶ 27.

[¶ 13] In *Christensen,* 1997 ND 57, ¶ 8, 561 N.W.2d 631, we said N.D.R.Ev. 404(b) "was not intended . . . to exclude evidence of activity in furtherance of the same criminal activity." We concluded the district court did not abuse its discretion in admitting evidence of the accused's prior sexual acts with the complainant in Minnesota, because those acts were introduced to show the accused's preparation and grooming of the complainant before the charged criminal act. *Christensen,* at ¶ 8.

[¶ 14] In *Alvarado,* 2008 ND 203, ¶¶ 10–19, 757 N.W.2d 570, we held a dis-

trict court did not abuse its discretion in allowing a wife to testify to prior, but nearly contemporaneous acts of domestic violence committed by her husband, the defendant in a felonious restraint prosecution. We said that "the prior acts of domestic violence were not independent acts; rather, they were evidence of activity in furtherance of the same criminal activity," and that "the evidence at issue was not N.D.R.Ev. 404(b) evidence." *Alvarado*, at ¶ 12. We further explained the evidence could have been admitted under a N.D.R.Ev. 404(b) analysis and the district court appropriately analyzed the evidence under N.D.R.Ev. 403 to decide the evidence provided "a more complete story of the crime by putting it in context of happenings near in time and place." *Alvarado*, at ¶¶ 13–19 (quoting *State v. Gefroh*, 495 N.W.2d 651, 654 (N.D.1993)).

[¶ 15] A common thread in our cases discussing the admissibility of evidence of prior bad acts requires the district court to conduct the necessary analysis under N.D.R.Ev. 404(b) and 403 and to provide appropriate limiting instructions for the permissible purposes for prior bad acts evidence. *See, e.g., Paul*, 2009 ND 120, ¶¶ 15–28, 769 N.W.2d 416; *Micko*, 393 N.W.2d at 744–45. Here, the record reflects the State's case against Aabrekke primarily revolved around credibility determinations. The record does not establish the district court applied the three-step analysis under N.D.R.Ev. 404(b) for the admissibility of the prior bad acts evidence. The State offered the testimony about Aabrekke's prior acts to show why the complainant did not immediately tell her mother about the incident and to show a continuing pattern of planning, preparation and grooming. The State's purpose for offering the evidence about Aabrekke's prior acts with the complainant is an allowable purpose under N.D.R.Ev. 404(b). *See*

*Paul*, at ¶¶ 24–25; *Alvarado*, 2008 ND 203, ¶¶ 10–12, 757 N.W.2d 570; *Christensen*, 1997 ND 57, ¶¶ 6–8, 561 N.W.2d 631. Nevertheless, the record does not establish the court did any further analysis under N.D.R.Ev. 404(b), did the required balancing under N.D.R.Ev. 403(b), or instructed the jury about the limited purpose of the prior bad acts evidence. *See Paul*, at ¶¶ 27–28; *Ramsey*, 2005 ND 42, ¶¶ 25–31, 692 N.W.2d 498; *Micko*, at 744–45. Moreover, the court did not provide the required analysis under N.D.R.Ev. 404(b) or N.D.R.Ev. 403 or a limiting instruction for the evidence about the prior abuse against the complainant's mother. The record does not reflect the court gave, or that either counsel specifically requested, an instruction on the limited use of the prior bad act evidence. *See State v. Allery*, 322 N.W.2d 228, 232–33 (N.D.1982) (recognizing responsibility of district court and counsel to ensure jury is properly instructed on issues). The lack of an instruction about the limited purpose of the prior bad act evidence was exacerbated by the complainant's unexpected testimony about Aabrekke's prior sexual act with the complainant's mother and the other evidence of sexual abuse of the complainant's mother, which both occurred when the complainant's mother was a child and did not involve sexual contact or acts with the complainant. Because of the dangers inherent in admitting evidence of prior bad acts to show propensity and a district court's obligation to ensure a defendant receives a fair trial, the court should have given a cautionary instruction during trial and in its final instructions. *See Paul*, at ¶ 27; *Micko*, at 744.

[¶ 16] Under the circumstances of this case, we conclude the district court misapplied the law in admitting the prior bad act evidence without the necessary analysis and without giving an instruction

on the limited purpose of the evidence. We therefore conclude the court abused its discretion. On this record, we cannot say the admission of the prior bad acts evidence without the necessary analysis and without a cautionary instruction was harmless error. *See Micko,* 393 N.W.2d at 745–46. We reverse the judgment and remand for a new trial.

### III

[¶ 17] Aabrekke's remaining issues are not likely to arise on remand, and we need not address them in this appeal. *See Schmeets,* 2009 ND 163, ¶ 20, 772 N.W.2d 623; *State v. Hirschkorn,* 2002 ND 36, ¶ 23, 640 N.W.2d 439.

### IV

[¶ 18] We reverse the judgment and remand for further proceedings.

[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 20] Because the District Court did not abuse its discretion in its evidentiary rulings, I would affirm.

[¶ 21] Testimony of prior bad acts is not admissible to prove the defendant's propensity to commit the crime being tried. Evidence of prior bad acts is admissible for other purposes. N.D.R.Ev. 404.

[¶ 22] Before trial, Aabrekke moved to prohibit all testimony about prior sexual misconduct by himself or family members with the complainant or other family members. The district court denied the blanket ban and ruled that proffered evidence would be evaluated for admission during trial, including consideration of the purpose for which it would be offered.

[¶ 23] During trial the prosecution elicited testimony from the child about prior sexual abuse by Aabrekke. The child also testified that she had told her mother of the prior abuse and that "nothing happened" in response.

[¶ 24] During cross-examination of the child, the defense elicited testimony that the child's mother had been victimized sexually by Aabrekke.

[¶ 25] During examination of the mother, the prosecution elicited testimony about how she had been sexually victimized by her uncle and how when she had reported it, she had been ostracized by her family. She explained that that history led her, in seeking to protect the child, not to report the child's victimization to other family members but rather to protect the child in other ways.

[¶ 26] As the district court correctly ruled, the child's testimony about prior victimization by Aabrekke was admissible to show plan and the like. The defense claimed the child was lying. In that context, the child could as well have been lying about prior abuse as about the charged event.

[¶ 27] The defense cannot complain about testimony it itself elicited from the child about Aabrekke's victimization of her mother. *See* 3 Wigmore on Evidence § 786 (1940) ("a party *waives objection* to a responsive answer, by the very asking of the question").

[¶ 28] The testimony about the mother's victimization by her uncle was offered to prove how and why the mother was seeking to protect the child by avoiding a confrontation and employing other means. The mother's testimony about the uncle was not offered to prove conduct of Aabrekke in conformity with it.

[¶ 29] Requiring N.D.R.Ev. 404 any time bad acts by others are mentioned in testimony leads to absurdity:

> Q: How do you remember that it happened on September 11, 2001?
>
> A: Terrorists flew planes into the World Trade Center that day.

Even though this would be testimony about prior bad acts, it rationally triggers no need for allocution about balancing and no need for a cautionary instruction.

[¶ 30] Rule 30, N.D.R.Crim.P., places the burden on a party to request or object to an instruction. The rule limits error:

> (d) Preserving Objections; Plain Error.
>
> (1) A party may assign as error:
>
> (A) an error in an instruction actually given if that party made a proper objection under Rule 30(c), or
>
> (B) a failure to give an instruction if that party made a proper request under Rule 30(a).
>
> (2) A court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by Rule 30(d)(1)(A) or (B).

As the Court said in *State v. Allery*, 322 N.W.2d 228, 232 n. 3 (N.D.1982), "attorneys have the professional responsibility to request or object to specific instructions of points of law resulting from testimony or on developments during trial, Rule 30, NDRCrimP. This primary responsibility cannot be shifted to the judge but should be shared by both the prosecution and the defense...."

[¶ 31] Even though no cautionary instruction was requested, the majority seeks to impose a burden on the judge to give an unrequested instruction. It cites to *State v. Paul*, 2009 ND 120, 769 N.W.2d 416; *State v. Micko*, 393 N.W.2d 741 (N.D. 1986); and *State v. Allery*, 322 N.W.2d 228 (N.D.1982). In *Paul*, at ¶ 27, the Court said there was no error, and limiting instruction was requested and given. In *Micko*, at 745–46, the Court said the evidence should not have been admitted, and no cautionary instruction was requested or given, but the Court concluded the error was harmless. In *Allery*, at 233, the Court said prior-inconsistent-statements testimony presented by the prosecution that should not have come in without a cautionary instruction resulted in reversal because "[t]his testimony in all probability was the straw that broke the camel's back."

[¶ 32] The jury was instructed to bring back a guilty verdict only if it found beyond a reasonable doubt that Aabrekke committed the offense in the period specified. A jury is presumed to follow the court's instructions. *State v. Skorick*, 2002 ND 190, ¶ 17, 653 N.W.2d 698.

[¶ 33] As noted above, the defense cannot complain of the evidence it elicited. None of the testimony elicited by the prosecution fits the definition of the straw that broke the camel's back. With the defense that the child was lying, it would seem as likely that the child was lying about prior events. The mother's testimony about being victimized by her uncle related only to her motivation.

[¶ 34] The district court properly admitted evidence and committed no reversible error in not giving an instruction no one requested. I would affirm.

[¶ 35] DALE V. SANDSTROM