Tufte, Justice.
 

 [¶ 1] Clyde Pickens appeals a criminal judgment entered after a jury found him guilty of gross sexual imposition. Pickens argues the district court's errors in responding to two requests from the jury prejudiced his substantial rights and denied him a fair trial. We reverse and remand for a new trial.
 

 I
 

 [¶ 2] Pickens moved to western North Dakota in 2011 with D.R. and her children, M.R. and C.R. After arriving, Pickens and D.R. began CTC Cleaning Services and performed construction cleanup work. Pickens lived with D.R. and helped care for her children.
 

 [¶ 3] D.R. testified about an incident that occurred between her and Pickens on December 31, 2012. After an argument relating to the cleaning business, Pickens made physical contact with D.R. Pickens was arrested and pled guilty to simple assault. D.R. testified that about a week after the incident on New Year's Eve, M.R. told her that Pickens had inappropriately touched her.
 

 [¶ 4] In November 2013, after investigating the allegations by M.R., the State charged Pickens with three counts of gross sexual imposition for having sexual contact with M.R. The State alleged the sexual contact occurred in November or December 2012 when M.R. was eleven years old.
 

 *615
 
 [¶ 5] M.R. testified the sexual contact began after the parties moved to North Dakota. She testified Pickens touched her vagina and breasts under her clothes. She testified the sexual contact continued after she told him to stop.
 

 [¶ 6] C.R., M.R.'s younger brother, also testified. C.R. testified that he witnessed Pickens touch M.R.'s private parts on the couch and heard her tell him to stop. He testified he observed Pickens do this on more than one occasion. C.R. testified he did not tell anyone about what he saw until M.R. told their mom what Pickens did to her.
 

 [¶ 7] In addition to the live testimony, the district court admitted and played to the jury a video recording of an interview of M.R. Recorded audio from another interview of M.R., C.R., and D.R. with law enforcement was also admitted and played to the jury.
 

 [¶ 8] Pickens testified and denied having sexual contact with M.R. He testified that he believed D.R. had M.R. and C.R. fabricate the sexual contact after the incident on New Year's Eve so D.R. could gain control of the cleaning business. Pickens' attorney also explained to the jury that inconsistencies existed between statements made by D.R., C.R., and M.R.
 

 [¶ 9] While discussing the closing instructions to the jury, Pickens' attorney requested a limiting instruction for the evidence involving Pickens' simple assault conviction. The district court denied the request for an instruction limiting the jury's consideration of the evidence relating to the simple assault because Pickens used the evidence as part of his defense.
 

 [¶ 10] During deliberations, the jury requested transcripts of C.R.'s and M.R.'s testimony. Transcripts were unavailable; however, Pickens suggested providing the jury with an audiotape of the testimony, but the district court declined. The court informed the jury that transcripts of the testimony were not available and that they would have to rely on their recollection of the testimony.
 

 [¶ 11] The jury also requested the video interview of M.R. Over Pickens' objection, the court allowed a clerk to play the video for the jury in the jury room. The jury found Pickens guilty.
 

 II
 

 [¶ 12] Pickens argues the district court erred in responding to two jury requests made during deliberations. Pickens claims the court's responses to the jury prejudiced his substantial rights and entitle him to a new trial.
 

 [¶ 13] A defendant has a right to be present in the courtroom at every stage of trial. N.D.R.Crim.P. 43(a)(1)(B) ;
 
 State v. Parisien
 
 ,
 
 2005 ND 152
 
 , ¶ 7,
 
 703 N.W.2d 306
 
 . A defendant's "right to be present in the courtroom at every stage of his trial is one of the most basic rights guaranteed by the Confrontation Clause" of the Sixth Amendment to the United States Constitution.
 
 State v. Klose
 
 ,
 
 2003 ND 39
 
 , ¶ 32,
 
 657 N.W.2d 276
 
 (citing
 
 Illinois v. Allen
 
 ,
 
 397 U.S. 337
 
 , 338,
 
 90 S.Ct. 1057
 
 ,
 
 25 L.Ed.2d 353
 
 (1970) ). A district court errs when it communicates to the jury in the defendant's absence.
 
 Klose
 
 , at ¶ 32.
 

 [¶ 14] Rule 43(a)(3)(A), N.D.R.Crim.P., governs the procedure to be followed when a jury has a question for the district court after the jury has retired for deliberations:
 

 If, after beginning deliberations, the members of the jury request information on a point of law or request to have testimony read or played back to them, they must be brought into the courtroom. The court's response must be provided in the presence of counsel and the defendant.
 

 *616
 
 [¶ 15] Here, the jury sent a note requesting a "transcript of M.R.'s testimony" and a "transcript of C.R.'s testimony." The district court discussed the request in open court outside the presence of the jury with the State, Pickens' attorney, and Pickens present:
 

 The Court: My suggestion would be to respond to them saying, there are no transcripts of their testimony. You must rely on your collective recollection of their testimony.
 

 Mr. Baumann: I think alternatively, you could allow them to come and listen to it.
 

 The Court: That's a step that I don't want to take at this time. I-they're going to be going through another four hours, counselor?
 

 Mr. Byers: I'd say the Court's response, at least at this point, is just to let them know there's no transcripts and not suggest anything about audio.
 

 Mr. Baumann: Your Honor, ... I guess what we'd request is that the Court indicate that transcripts are not currently available. However, if they wish to listen to an audio recording, that they could do that.
 

 The Court: What's the basis of that? What rule of law allows me to do that, counselor?
 

 ....
 

 Mr. Byers: [ N.D.C.C. §] 29-22-05 talks a little about-bit about it, Judge.
 

 The Court: Right now, there's no specific testimony-
 

 ....
 

 The Court:-about which they are in doubt. ... [A]nd like I said, I-there are no transcripts to begin with, number one. And there's nothing really that I've ever felt fit cleanly under the rules. So my proposal is that we-I've just kind of written this out-there are no transcript[s] of either person's testimony. You must rely on your own collective recollection of their respective testimony.
 

 After further objection by Pickens' attorney about informing the jury of the option to listen to M.R.'s and C.R.'s testimony, the court responded to the jury in writing: "There are no transcripts of either person's testimony."
 

 [¶ 16] The district court erred by not calling the jury into open court and informing them that audio of the testimony was available. "The district court must allow a jury to rehear any testimony requested."
 
 State v. Austin
 
 ,
 
 2007 ND 30
 
 , ¶ 19,
 
 727 N.W.2d 790
 
 (discussing N.D.C.C. § 29-22-05 ). In 2010, N.D.R.Crim.P. 43(a) superseded N.D.C.C. § 29-22-05 with different language but, for purposes of the issue here, provided substantively equivalent protection.
 
 See
 
 N.D.R.Crim.P. 43, Explanatory Note. Rule 43(a)(3)(A), N.D.R.Crim.P., plainly states a jury may have testimony played back on request.
 

 [¶ 17] Rule 43(a)(3)(A), N.D.R.Crim.P., also states the jury "must be brought into the courtroom." Rule 43(a)(3)(B), N.D.R.Crim.P., allows the district court to "respond to a jury's question or request for testimony in a manner other than in open court if agreed to by counsel and the defendant." The record does not indicate an alternative manner of response was agreed to by counsel and Pickens.
 

 [¶ 18] The State's case consisted of testimonial evidence and recorded interviews. Part of the State's theory of the case was that C.R. corroborated M.R.'s statements about the sexual contact. Part of Pickens' theory of the case centered around inconsistencies in the witnesses' statements. The court should have brought the jury into the courtroom and informed the jury that audio of C.R.'s and M.R.'s testimony was available. The court also could have requested the jury to clarify if there was
 
 *617
 
 specific testimony it wanted to rehear.
 
 See
 

 State v. Jahner
 
 ,
 
 2003 ND 36
 
 , ¶ 6,
 
 657 N.W.2d 266
 
 ("to save time and avoid confusion, a trial court may request the jury to specify the testimony it desires to rehear").
 

 [¶ 19] The jury then requested to view the video interview of M.R. Pickens' attorney requested that the jury view the video in the courtroom with Pickens present. The district court suggested that a clerk play the video in the jury room:
 

 The Court: We can have the clerk play the video. That way, they can-if there are parts they want to run over, they can do that without us in the courtroom. I think that would be best.
 

 ....
 

 Mr. Byers: [T]he State's request would be that we send the clerk back with a laptop and have them play whatever part they want to play. She knows enough not to engage in conversation with them.
 

 Mr. Baumann: Well, I guess we would ask that they play it in here with us present, ... that's our request.
 

 The Court: My problem with that is, Mr. Baumann, is you've now eliminated their ability to go back and forth and to review bits and pieces that they want to view. They'd have to sit here for the entire interview.
 

 Mr. Baumann: I understand.
 

 The Court: And then, they'd never-they wouldn't have the ability to say, well, can we see this little part again?
 

 Mr. Baumann: I understand.
 

 The Court: Okay. So I think the better solution is to send the clerk back with a laptop to play all or whatever part of the interview they wish to see without any of us around to influence that at all. ... Okay? So that'll be the ruling of the Court.
 

 ....
 

 The Court: Okay. Okay. And then, you know, you're not to engage at all. Just whatever portions or all of that interview that they want to hear, and you know, I know that they have an audiotape [of M.R.'s, D.R.'s, and C.R.'s police interview] back there (indiscernible) to hear that, as well. State have any objection to them hearing the audio interview?
 

 Mr. Byers: Only-I would only like that done if they ask for that, Your Honor.
 

 The Court: Obviously.
 

 Mr. Byers: Yes.
 

 The Court: It's nothing to volunteer, but if they ask, since she's there.
 

 ....
 

 The Court: Okay. So if they do happen to, on their own initiative, ask you to play that, as well, then you can do that, as well, play them the portions or all of that piece of evidence that they wish to hear. Okay? Okay. Thank you.
 

 [¶ 20] Section 29-22-02, N.D.C.C., governs the procedure for custody of jurors and prohibits improper communications with the jurors:
 

 The jurors shall retire in charge of one or more officers who must be sworn to keep them together in some private and convenient place until they have rendered their verdict. Such officer or officers shall furnish food and other necessaries to the jurors, at the expense of the state, as directed by the court, and may not speak to nor communicate with such jurors or any of them nor permit any other person so to do except by order of the court.
 

 "[T]he intention of § 29-22-02 is to ensure extraneous influences and communications do not taint jury deliberations."
 
 State v. Weisz
 
 ,
 
 2002 ND 207
 
 , ¶ 7,
 
 654 N.W.2d 416
 
 ;
 
 see also
 

 *618
 

 State v. Bergeron
 
 ,
 
 340 N.W.2d 51
 
 , 58 (N.D. 1983) ("[T]he State and the court, independently, have an interest and obligation to assure that the jury reaches a verdict free of extraneous pressures, strain, or discomfort.").
 

 [¶ 21] We are concerned by the district court's decision to allow a clerk to present evidence to the jury during its deliberations. Under N.D.C.C. § 29-22-02, the court may order persons to have communications with the jury. That part of the statute is not for the purpose of allowing a third person to display evidence to the jury during its deliberations.
 
 See, e.g.
 
 ,
 
 United States v. Fredericks
 
 ,
 
 599 F.2d 262
 
 , 266 (8th Cir.1979) ("[R]equiring a United States Marshal to enter the jury deliberation room for purposes of displaying evidence cannot be condoned. Its use is quite possibly per se reversible error."). Allowing another person into the jury room to display evidence may influence the jury's decision in unexpected ways not preserved in the record. This type of interaction raises potentially serious concerns about the privacy and integrity of jury deliberations.
 

 [¶ 22] No record exists of any communication that may have occurred between the clerk and the jury outside of Pickens' presence. The district court also gave the clerk authority to play the audio interview of M.R., C.R., and D.R. if the jury requested it. The court ordered the clerk not to engage with the jury, but some engagement would have been necessary if the jury asked for portions of the video to be replayed or requested the clerk to play the audio interview. The record is silent as to what specific evidence the clerk presented to the jury.
 

 [¶ 23] If the district court's error "is one of constitutional magnitude, we must determine whether the error was harmless beyond a reasonable doubt by considering the probable effect of the error in light of all the evidence."
 
 State v. Smuda
 
 ,
 
 419 N.W.2d 166
 
 , 168 (N.D. 1988). If the error relates to procedural rules or statutes, this Court decides "whether the error had a significant impact upon the verdict, but we do not have to find that the error was harmless beyond a reasonable doubt."
 

 Id.
 
 ; see also
 

 State v. Acker
 
 ,
 
 2015 ND 278
 
 , ¶ 6,
 
 871 N.W.2d 603
 
 (In reviewing a nonconstitutional trial error, "we reverse only when that error prejudices the defendant."). A district court error that does not prejudice the defendant's substantial rights must be disregarded. N.D.R.Crim.P. 52(a).
 

 [¶ 24] Here, the district court's failure to bring the jury into open court and inform them that audio testimony was available were not constitutional errors. The court's responses to the jury's requests occurred in Pickens' presence. It is unclear whether any communications occurred between the jury and the clerk outside of Pickens' presence. Without a record of the interaction between the clerk and the jury, we can only speculate as to whether any communications between them violated Pickens' constitutional right to be present.
 

 [¶ 25] We do not decide whether one of these errors by itself had a significant impact upon the verdict. Taken as a whole, we conclude that the cumulative effect of these errors denied Pickens his right to a fair trial and prejudiced his substantial rights.
 
 See
 

 Parisien
 
 ,
 
 2005 ND 152
 
 , ¶ 22,
 
 703 N.W.2d 306
 
 (cumulative effect of errors at trial may warrant reversal). We reverse the judgment and remand for a new trial.
 

 III
 

 [¶ 26] Pickens raises additional arguments in his brief. He argues the district court erred by allowing two of the State's witnesses to remain in the courtroom
 
 *619
 
 during opening statements. Pickens also argues the court erred in denying a jury instruction relating to the evidence involving the simple assault. We decline to address that argument because the issue relating to the witness sequestration during opening statements may not arise on retrial, and in any case the asserted purpose of avoiding a witness hearing a summary of anticipated evidence has less significance on retrial where all witnesses have already given sworn testimony.
 

 [¶ 27] We also decline to decide whether the district court erred in denying the jury instruction relating to the simple assault evidence, because resolution of the issue is not necessary to decide this appeal. Nevertheless, we note that under N.D.R.Ev. 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evidence of other bad acts or crimes may be admissible for other purposes under N.D.R.Ev. 404(b)(2), and this Court has consistently stated that a district court must apply a three-step analysis on the record to determine whether the evidence is admissible.
 
 E.g.,
 

 State v. Aabrekke
 
 ,
 
 2011 ND 131
 
 , ¶¶ 9-10,
 
 800 N.W.2d 284
 
 .
 

 [¶ 28] The record here shows there was no objection to the testimony regarding Pickens' simple assault conviction. Both parties used the evidence as part of their case. Additionally, Pickens' attorney orally requested the limiting instruction. Under N.D.R.Crim.P. 30(a), a party must request a jury instruction in writing. If Pickens objects to the evidence of the simple assault conviction on remand, the district court must apply the three-step analysis under N.D.R.Ev. 404(b) to decide whether the evidence is admissible.
 

 IV
 

 [¶ 29] The judgment is reversed and remanded for a new trial.
 

 [¶ 30] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.